ACCEPTED
03-16-00132-CV
11216005
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/17/2016 8:42:04 PM
JEFFREY D. KYLE
CLERK

NO. 03-16-00132-CV

*IN THE*
*THIRD COURT OF APPEALS*
*AT AUSTIN, TEXAS*

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/17/2016 8:42:04 PM
JEFFREY D. KYLE
Clerk

**CHARLES J. HUGHES,**
**Appellant**

**v.**

**TOM GREEN COUNTY,**
**Appellee**

---

**APPELLEE'S BRIEF**

---

JAMES DAVID WALKER
P. O. Box 41
Milano, Texas 76556
SBOT 20706000
Phone: (512) 636-9520
Email: walker@2appeal.com
ATTORNEY FOR
APPELLEE TOM GREEN COUNTY

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Appellant's Brief lists Appellee Tom Green County's trial counsel.

Tom Green County is represented on appeal by:

James David Walker
P. O. Box 41
Milano, Texas 76556
SBOT 20706000
Phone: (512) 636-9520
Email: walker@2appeal.com

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    Authority of Commissioners Court. . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Governmental Immunity - General Principles.. . . . . . . . . . . . . . . . . 23
    Waiver of Governmental Immunity - Legislative Control. . . . . . . . . 25
    Waiver of Governmental Immunity -
        The *Lawson* Plurality Exception. . . . . . . . . . . . . . . . . . . . . . 32

            *Lawson* Issues Summarized. . . . . . . . . . . . . . . . . . . . . . . 32
    Court Not Required to Adopt *Lawson*. . . . . . . . . . . . . . . . . . . . . . 35
    *Reata* Limitation on Immunity
        Has No Application to *Lawson* Exception. . . . . . . . . . . . 38
    Any Recovery
        Should Be Limited To A *Reata* Offset.. . . . . . . . . . . . . . 48
    Alternatively *Lawson* Should Not Be Applied
        To A Contract Executed in 1994. . . . . . . . . . . . . . . . . . . 50
    Record Does Not Support A *Lawson* Waiver. . . . . . . . . . . . . . . 51
        The record does not implicate the *Reata* immunity
        exception. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
        The record does not implicate the *Lawson* immunity
        waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
    Waiver of Governmental Immunity - By Conduct. . . . . . . . . . . . . . 59

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

# INDEX OF AUTHORITIES

## *Cases*

*A. I. Divestitures, Inc. v. Texas Comm'n on Envtl. Quality*, 2016 WL 3136850 (Tex.App.–Austin 2016, no. pet. h.). . . . . . . . . . . . . . . . . . . . . . . . . 39, 40, 43

*Aledo ISD v. Choctaw Properties, L.L.C.*, 17 S.W.3d 260 (Tex.App.–Waco 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Anderson v. Wood*, 152 S.W.2d 1084 (Tex. 1941). . . . . . . . . . . . . . . . . . . 21

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000). . . . . . . . . . . . 20

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117 (Tex. 2015). . . . . . 25

*Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704 (Tex. 2003). . . 19, 23, 27

*City of Carrollton v. Singer*, 232 S.W.3d 790 (Tex. App.–Fort Worth 2007, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 47, 48

*City of Dallas v. Albert*, 354 S.W.3d 368 (Tex. 2011). . . . . . . . . . . . . . . . 41

*City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102 (Tex.App.–Dallas 2013, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 53, 63

*City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501 (Tex.App.–Austin 2014, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 47, 63

*Employees Ret. Sys. of Texas v. Putnam, LLC*, 294 S.W.3d 309 (Tex.App.–Austin 2009, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 48-50

*Federal Sign v. TSU.*, 951 S.W.2d 401 (Tex. 1997). . . . . . . . . . . . . . . . . . 48

*Firemen's Ins. Co. of Newark, N.J. v. Bd. of Regents of Univ. of Texas Sys.*,
909 S.W.2d 540 (Tex.App.–Austin 1995, writ denied). . . . . . . . . . . . . . . . 21

*Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004). . . . . . . . . . . . . . . . 24

*Hays County v. Hays County Water Planning Partnership*, 106 S.W.3d 349
(Tex.App.–Austin 2003, pet. den.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783
(Tex.App.–Dallas 2013, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Jonah Water Special Util. Dist. v. White*, 2009 WL 2837649
(Tex.App.–Austin 2009, pet. struck). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Labrado v. Univ. of Texas at El Paso*, 2012 WL 43385 (Tex.App.–Austin
2012, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 62, 63

*Leach v. Texas Tech Univ.*, 335 S.W.3d 386 (Tex.App.–Amarillo 2011, pet.
denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). . . 37, 48,
53, 54

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012). . . . . . . . . . . . . . . 20

*Smith v. City of Blanco*, 2009 WL 3230836 (Tex.App.–Austin 2009, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64, 65

*Smith v. Lutz*, 149 S.W.3d 752 (Tex.App.–Austin 2004, no pet.). . . . . . . . 54

*Tarrant County v. Smith*, 81 S.W.2d 537 (Tex.Civ.App.–Fort Worth 1935,
writ ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002). . . . 29,
32, 33, 36, 38, 44, 51

4

*Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007).. . . . . 31, 43, 44

*Texas Dept. of Health v. Neal*, 2011 WL 1744966 (Tex.App.–Austin 2011, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 34, 35, 40, 43, 46

*Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 28, 30, 36, 47, 66

*Texas Southern University v. State Street Bank & Trust Co.*, 212 S.W.3d 893 (Tex.App.–Hou. [1st Dist.] 2007, pet. denied). . . . . . . . . . . . . . . . . . . . . 63

*Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . 21

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006).. . . . . . . . . . . . . 24, 34

*Travis County v. Pelzel & Assocs*., 77 S.W.3d 246 (Tex. 2002).. . . 26, 27, 31

*Travis County v. Rogers*, 2015 WL 4718726 (Tex.App.–Austin 2015, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 46

*TXU Energy Retail Co. L.L.C. v. Fort Bend ISD*., 472 S.W.3d 462 (Tex.App.–Dallas 2015, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Webb County v. Khaledi Props*., 2013 WL 3871060 (Tex.App.–San Antonio 2013, no pet.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003). . . . . . . 24

## *Statutes*

Tex. Civ. Prac. & Rem. Code § 154.073.. . . . . . . . . . . . . . . . . . . . . . 60, 61

Tex. Civ. Prac. & Rem. Code §107.001-.005.. . . . . . . . . . . . . . . . . . . . . 30

Tex. Gov't Code § 311.034. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [26](#)

Tex. Loc. Gov't Code § 81.006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [21](#)

Tex. Loc. Gov't Code § 81.001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [21](#)

## STATEMENT OF FACTS

Appellant Hughes appeals the grant of a plea to the jurisdiction [Appendix1]. Hughes sued Appellee Tom Green County alleging breach of a 1994 agreement, the Mutual Partial Assignments [Appendix2]. Hughes complains that the County breached the Mutual Partial Assignments (MPA) by failing to name the County's library in honor of Hughes' family. He seeks damages in the amount of at least $3,000,000 plus attorney's fees. [Appendix3]

The MPA was executed during the course of prior litigation (the SMU litigation). Defendant's Exhibit 1 (CR3:4) contains a copy of every pleading and any other document filed in the SMU litigation. (RR2:10)

Because this is an appeal from the grant of a plea to the jurisdiction, the initial focus is on the facts pleaded by Hughes. His pleading is attached as Appendix3. Hughes pleads:

*that the will of Hughes' late uncle devised the residuary of the uncle's estate to the County.

*that in 1994 SMU filed suit seeking release of the will's restrictions on the use of a gift made to it by the uncle's will.

7

*that the County intervened in the SMU litigation and sought a declaration that the residue of such gift to SMU (the amount not needed to satisfy the purpose of the gift) belonged to the County.

*that Hughes and others (the Hughes group) thereafter intervened in the SMU litigation and sought a declaration that the residuary gift to the County had lapsed and that, as a consequence, the residue of the gift to SMU belonged to the uncle's heirs.[1]

*that the SMU litigation court ordered the parties to mediation.

Prior to mediation, the MPA was executed.[2] Hughes pleads that the signatories to the MPA were authorized to sign by all required authorities. (CR:808) SMU was not a party to the MPA.

By the MPA, the Hughes group assigned to the County "50% of the net proceeds they actually receive from [the SMU litigation]." Likewise, the

---

[1]Hughes was one of at least three heirs participating in the SMU litigation. In the current litigation, Hughes is the lone plaintiff. Thus, for the sake of simplicity the argument will in some respects ignore other heirs.

[2]Hughes' brief asserts that the MPA was signed at mediation. (Brief:3) Although the timing does not seem to have any significance, the record does not support the brief's assertion. The MPA is not dated. However, Hughes pleads, "Prior to mediation, Tom Green County and the Heirs-at-Law entered an agreement titled Mutual Partial Assignments . . . ." (CR:808) Hughes acknowledges that the MPA was signed before the other agreements. (Brief:14-15)

County thereby assigned to the Hughes group "50% of the net proceeds it actually receives from [the SMU litigation]." Similarly, the MPA provides that "[t]hese mutual assignments are irrevocable and are intended to be a mutual exchange of 50% of the respective interests of the parties hereto in any recovery under said cause against SMU and any other adverse parties who may be joined in the cause by mutual agreement of the parties hereto."

The MPA expressly disavows any intent to extinguish claims. It provides in relevant part: "[T]his document is in no way intended to eliminate or reduce *in any fashion* the cause of action, claims, or rights held by the heirs-at-law or the County." (emphasis added).

The MPA also includes the following: "In further consideration of this matter, the County agrees to name the main county library, in honor of Duwain E. Hughes, Jr., and/or Frances Crews Hughes, if the commissioners consider the County's ultimate recovery in the cause to be substantial enough for such recognition." Duwain and Frances Hughes are herein referenced as "the Hughes family."

Thereafter, during mediation, the parties executed a document captioned Settlement Agreement. [Appendix4] The Settlement Agreement

9

provided: that SMU would pay $1,000,000 to the County and the other parties to the suit (excepting one party); that SMU would obtain appropriate relief as to the uncle's will; and that all parties would dismiss their claims with prejudice.

Thereafter, the parties executed a document captioned Compromise and Settlement and Release of All Claims (the Compromise Agreement). (CR:671) The Compromise Agreement [Appendix5] provides that the Settlement Agreement is "further reduced to writing in this agreement."

The County disputes Hughes' assertion that the Compromise Agreement "does not provide for any releases between the County and the Hughes heirs." (Brief:4) The Compromise Agreement summarizes the claims asserted by SMU, the County, and the Hughes group and provides that by the Settlement Agreement the parties agreed to a "complete and final compromise and settlement of such suit and all of such disputes." Similarly, the trial court signed a Final Judgment [Appendix6] which recites that "all matters in controversy between the parties which is the subject matter of this suit have been fully and finally agreed to and settled."

The Settlement Agreement, the Compromise Agreement, and the Final

Judgment make no mention of the MPA. Hughes pleads that the County and the Hughes group evenly split (50-50) the $1,000,000 paid by SMU. (CR:809)

Hughes pleads that he accepted the SMU settlement during mediation because the County's representatives had stated that "the County's portion of the SMU's offer would be substantial enough to warrant naming the Central Library as contemplated in the [MPA]."

Hughes further pleads that the County's commissioners court met in open session on July 9, 1994 and "considered the ultimate recovery in the lawsuit to be substantial enough and ratified the [MPA]." (CR:809) He also pleads that the commissioners court ratified "the separate agreement settling claims against SMU and dismissing the lawsuit." (CR:809)

Hughes pleads that the County's commissioners court met on March 1, 2011 and passed a resolution which named the library the "Stephens Central Library" and which expressly provided that the County's recovery in the SMU litigation is not substantial enough to name the library in honor of the Hughes family. (CR:610)

Hughes sued the County, asserting three causes of action: (1) breach of

11

the MPA (by failing to name the library in honor of Hughes' family) (CR:812); (2) an equitable claim captioned "money had and received," alleging that the County accepted the benefits of the MPA and unjustly retains the SMU settlement funds (CR:813); and (3) a declaratory judgment action asserting a violation of the Open Meetings Act and seeking to have the March 11, 2011 resolution naming the library declared void and unenforceable (CR:811).

The trial court granted the County's plea to the jurisdiction and dismissed for lack of subject matter jurisdiction the claims arising out of or pertaining to the MPA. (CR:833)

## SUMMARY OF THE ARGUMENT

Appellant Hughes sued the County seeking damages for breach of the library naming provision set out in the Mutual Partial Assignments (MPA). Hughes and the County executed the MPA during the course of prior litigation, being the SMU litigation.

There is a dispute over performance of the library naming provision. The MPA provides that the County will name the County's library in honor of the Hughes family - if the County's commissioners determine that the County's recovery in prior litigation, the SMU litigation, is substantial enough to name the library in honor of the Hughes family. The County contends that even had the 1994 commissioners court determined that the recovery was substantial enough to name the library for the Hughes family (disputed), the 2011 commissioners court nevertheless had discretion to make its own determination (a contrary determination) when it named the new library in honor of the Stephens family.

In an effort to avoid the expense of trial, the County pleaded governmental immunity. The trial court granted the plea to the jurisdiction and dismissed for lack of subject matter jurisdiction the claims arising out of

13

or pertaining to the MPA.

Hughes argues that he pleaded two grounds for waiver of immunity from suit: waiver of immunity for breach of a settlement agreement under application of the *Lawson* case and waiver of immunity by conduct.

Hughes failed to demonstrate that immunity was waived under application of the *Lawson* case. In *Lawson*, a Supreme Court plurality opined: "[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued."

Thus, the Lawson rule provides that immunity is waived on a breach of contract claim if three elements are satisfied:

1- a claim was asserted against the governmental entity;

2- the entity was thereby exposed to suit because of a waiver of immunity; and,

3-the claim was settled by the agreement made the basis of suit.

Hughes argues that the County was "exposed to suit" (County lacked immunity) in the SMU litigation because it voluntarily intervened in the SMU litigation. Hughes would thereby invoke the *Reata* case's voluntary

14

litigation exception to immunity.

However, in *A. I. Divestitures* this Court recognized that the judicially promulgated *Reata* immunity exception has no application to *Lawson* immunity waiver. The *Lawson* waiver rule applies only to agreements which settle claims as to which immunity has been statutorily waived.

In any event, the record does not support an application of *Reata* - because the County sought no damages in the SMU litigation. Likewise, *Reata* has no application because vis-a-vis Hughes the County's claims were merely defensive. Hughes intervened after the County intervened.

Additionally, the *Lawson* immunity waiver can have no application because the MPA did not settle any claim - much less a claim asserted by Hughes against the County. In the SMU litigation Hughes asserted no claim against the County.

Additionally, even if *Reata*'s judicially implemented limitation on the contours of immunity were engrafted onto the *Lawson* waiver rule, and even if *Lawson* otherwise had application, then logic and equity weigh in favor of likewise engrafting and applying *Reata's* limited scope of jurisdiction. If the County's voluntary intervention in the SMU litigation, or its conduct,

15

triggered a waiver of immunity (disputed),  then the trial court did not thereby acquire jurisdiction over Hughes' claim for monetary relief against the County in excess of an amount sufficient to offset the County's recovery (if any). Alternatively, the 2002 *Lawson* plurality's immunity waiver should not be applied to a contract signed in 1994.

Hughes failed to demonstrate that the County waived immunity by its conduct. Hughes relies on alleged representations which as a matter of law cannot be considered.

Even if such allegations could be considered, this court has repeatedly declined to apply a waiver by conduct exception to immunity. Even if the waiver by conduct theory were viable, the facts pleaded by Hughes do not support an equitable waiver of immunity.

The County is not alleged to have made any representations to Hughes concerning immunity. Hughes may have presumed that the County was obligated to name the new library in honor of his family. However, a misunderstanding of the law does not justify an equitable waiver of immunity.

Here, the County asserts immunity in an effort to avoid the expense of

trial. The pleaded facts do not demonstrate that the County made promises which it intended to break.

Here, there is a good-faith dispute over performance of the library naming provision: whether the 1994 commissioners court found that the SMU litigation recovery was substantial enough to name the library in honor of Hughes' family (disputed); and, even if it had, whether in the course of naming the new library the 2011 commissioners court is somehow precluded from making its own determination (a contrary determination).

There is no showing that Hughes exercised his statutory remedy: seeking legislative authority to sue the County. For that additional reason, there is no basis for an equitable waiver of the County's governmental immunity.

## ARGUMENT

## Background

There is a dispute over performance of the library naming provision set out in the Mutual Partial Assignments (MPA). The County denies that the 1994 commissioners court determined that the SMU litigation recovery was substantial enough to name the library in honor of Hughes' family. (CR:616) Even if the 1994 commissioners court had made such a determination, the 2011 commissioners court was not thereby precluded from making its own determination (a contrary determination) when naming the new library.

In this regard, the issue is not whether the SMU litigation recovery was substantial enough to name the library in honor the Hughes' family. The issue is whether the County's commissioners court considers the recovery substantial enough to name the library for the Hughes family. The contract which Hughes claims to have been breached, the MPA [Appendix2], provides that "the County agrees to name the main county library, in honor of Duwain E. Hughes, Jr., and/or Frances Crews Hughes, *if the commissioners consider* the County's ultimate recovery in the cause to be substantial enough for such recognition." (emphasis added).

The County contends that the 2011 commissioners court had authority to determine the issue of whether the recovery was substantial enough to name the library in honor of Hughes' family. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003) (commissioners court not bound by policy decisions of their predecessors); *TXU Energy Retail Co. L.L.C. v. Fort Bend ISD.*, 472 S.W.3d 462, 466 (Tex.App.–Dallas 2015, no pet.) (rejecting implied contract theory); *Texas Dept. of Health v. Neal*, 2011 WL 1744966, at *5 (Tex.App.–Austin 2011, pet. denied) (rejecting doctrine of equitable estoppel).

Hughes alleges that the 2011 commissioners court made its determination in violation of the Open Meetings Act. However, even if the 2011 determination were set aside, the commissioners court can make a new determination.

In an effort to avoid the expense of trial, the County pleaded immunity from liability and immunity from suit (CR:612) and filed a plea to the jurisdiction (CR:651-677). The trial court granted the plea to the jurisdiction and dismissed for lack of subject matter jurisdiction the claims arising out of or pertaining to the MPA. (CR:833)

19

## Standard of Review

Issues of immunity from suit, ripeness, and standing are issues of subject-matter jurisdiction that may be raised for the first time on interlocutory appeal. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, or whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction, is a question of law reviewed de novo. *City of Carrollton v. Singer*, 232 S.W.3d 790, 794 (Tex. App.–Fort Worth 2007, pet. denied). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without giving the claimant an opportunity to amend. *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 110 (Tex.App.–Dallas 2013, no pet.).

In a jurisdictional challenge, the court is bound neither by the legal conclusions nor by any illogical factual conclusions that Plaintiffs draw from

the facts pleaded. *Firemen's Ins. Co. of Newark, N.J. v. Bd. of Regents of Univ. of Texas Sys.*, 909 S.W.2d 540, 542 (Tex.App.–Austin 1995, writ denied); *see Aledo ISD v. Choctaw Properties, L.L.C.*, 17 S.W.3d 260, 262 (Tex.App.–Waco 2000, no pet.) (in review of ruling on a plea to the jurisdiction, we are not bound by legal conclusions nor by any illogical factual conclusions drawn from the facts pled).

A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims. *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).

**Authority of Commissioners Court**

The commissioners court is the general business and contracting agency of the county, and it alone has authority to make contracts binding on the county, unless otherwise specifically provided by statute. *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941). "The members of the commissioners court are the county judge and the county commissioners." Texas Local Government Code § 81.001(a). Three members generally constitute a quorum for conducting county business. Tex. Loc. Gov't Code

21

Ann. § 81.006(a).

The commissioners court is a court of record and speaks through its official minutes. *Hays County v. Hays County Water Planning Partnership*, 106 S.W.3d 349, 360-361 (Tex.App.–Austin 2003, pet. den.). The commissioners' court does not act by the statement of one member thereof. *Id.* No member of the commissioners court acting alone may bind the court or the county. *Id.. "[T]he* individual commissioners have no authority to bind the county by their separate action." *Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948).

The commissioners court can act only as a body and when in an official meeting. *Hays County*, 106 S.W.3d at 360-361. They meet as a court and transact the county business in open session. *Id.* This requirement is not a mere formality.

> [T]he commissioners' court does not act by the statement of one member thereof at the local drug store and another at the county victuals emporium, etc. They meet as a court and transact the county business in open session. Such requirement is not formal. It is substantial, both that the members may have the benefit of the knowledge and opinions of the other members, as well as that the public may know when and where its affairs are being transacted.

*Tarrant County v. Smith*, 81 S.W.2d 537, 538 (Tex.Civ.App.–Fort Worth 1935, writ ref'd).

## Governmental Immunity - General Principles

The doctrine of sovereign immunity serves to prevent governmental entities from being bound by the policy decisions of their predecessors. *Catalina Development, Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003); *see Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (sovereign immunity ensures that current policymakers are neither bound by, nor held accountable for, policies underlying their predecessors' long-term contracts). Although sovereign immunity furthers important public policy goals, the courts need not justify its application.

> In this Court's second Term, we acknowledged the common-law rule that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." We gave no basis for this principle of sovereign immunity, perhaps because a rule then more than six centuries old which the United States Supreme Court would describe as "an established principle of jurisprudence in all civilized nations" required no justification, or perhaps because the reasons given for the rule had evolved over the centuries, from "the king can do no wrong", to preserving the dignity of the state, to protecting state resources. The rule remains firmly established, and as it has come to be applied to the various governmental entities in this State, an important purpose is pragmatic: to shield the public from the

costs and consequences of improvident actions of their governments.

*Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006) (footnotes omitted).

Technically, Texas counties enjoy the benefit of governmental immunity - not sovereign immunity.

Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) (authority omitted).

For purposes of this case, there is no meaningful distinction between governmental immunity and sovereign immunity. Cases construing sovereign immunity are equally relevant to governmental immunity. "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties . . . ." *Harris County v. Sykes*,

24

136 S.W.3d 635, 638 (Tex. 2004).

Like sovereign immunity, governmental immunity encompasses both immunity from suit and immunity from liability. Immunity from suit can be challenged by a plea to the jurisdiction.

> Referred to as governmental immunity when applied to the state's political subdivisions, *Travis Cent. Appraisal Dist. v. Norman,* 342 S.W.3d 54, 57-58 (Tex. 2011), sovereign immunity encompasses both immunity from suit and immunity from liability, *Reata Constr. Corp.*, 197 S.W.3d at 374. Immunity from liability is an affirmative defense that bars enforcement of a judgment against a governmental entity, while immunity from suit bars suit against the entity altogether and may be raised in a plea to the jurisdiction. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

*Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

## Waiver of Governmental Immunity - Legislative Control

The courts consistently hold that only the Legislature can waive a county's immunity from suit for breach of contract. The waiver must be evidenced by statute or resolution and must be expressed by clear and unambiguous language.

> Express consent is required to show that immunity from suit has been waived. Thus in this case [involving a contract claim], Pelzel must establish consent to sue Travis County. Absent

consent, the trial court lacks jurisdiction.

A party may establish consent by statute or legislative resolution. The consent must be expressed by "clear and unambiguous language."

\* \* \*

*Travis County v. Pelzel & Assocs*., 77 S.W.3d 246, 248 (Tex. 2002) (authority omitted); *see Webb County v. Khaledi Props*., 2013 WL 3871060 (Tex.App.–San Antonio 2013, no pet.) (waiver of a county's immunity from suit for a claimed breach of contract requires a clear and unambiguous expression of the Legislature, either by statute or resolution).

The requirement that a statutory waiver of immunity be clear and unambiguous has been preserved by the legislature. Consider the following:

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

Tex. Gov't Code § 311.034.

26

When a county contracts with a private party, it waives its immunity from liability but not its immunity from suit.

> When a governmental entity contracts with a private party, as Travis County has done here, it is liable on its contracts as if it were a private party. But a governmental entity does not waive immunity from suit simply by contracting with a private party.

* * *

*Pelzel*, 77 S.W.3d at 248 (authority omitted); *see Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003) (contract formation, by itself, is not sufficient to waive a governmental unit's immunity from suit).

Texas courts have consistently deferred to the Legislature to waive immunity from suit.

> We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function. Indeed, in the Code Construction Act, the Legislature expressed its desire to maintain control over sovereign immunity [i]n order to preserve [its] interest in managing state fiscal matters through the appropriations process....; See Tex. Gov't Code § 311.034. Subjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments. Accordingly, the Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear.

27

*Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (authority omitted).

The Supreme Court has found contract claims to be especially appropriate for such legislative deference.

> In the contract-claims context, legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public. Moreover, legislative control ensures that current policymakers are neither bound by, nor held accountable for, policies underlying their predecessors' long-term contracts.

*Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (authority omitted).

Reasons for deferring to the Legislature in deciding whether to waive sovereign immunity for contract claims have been summarized as follows:

> the handling of contract claims against the government involves policy choices more complex than simply waiver of immunity, including whether to rely on administrative processes and what remedies to allow;

> the government should not be kept from responding to changing conditions for the public welfare by prior policy decisions reflected in long-term or ill-considered obligations;

> the claims process is tied to the appropriations process, and the priorities that guide the latter should also inform the former; and,

28

the Legislature is able to deal not only with these policy concerns but also with individual situations in deciding whether to waive immunity by resolution, cases by case, or by statute.

*Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 522 (Tex. 2002) (plurality) (footnotes omitted).

Because waiver of immunity is a matter committed to the legislature, the courts have been reluctant to apply a waiver-by-conduct theory: being waiver based on the notion that a governmental entity can unilaterally waive its governmental immunity through its own actions. This court has repeatedly declined to apply such a theory, as is demonstrated by the following:

> Carowest's notion that the City can unilaterally waive its governmental immunity through its own actions traces back to the Texas Supreme Court's now-infamous footnote in *Federal Sign v. Texas Southern University* intimating that "[T]here may be . . . circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." But in the years since it decided Federal Sign, the [Texas Supreme Court] has clarified—and repeatedly emphasized—that it defers to the Legislature, not the actions of individual governmental units, to determine whether, when, and how sovereign or governmental immunity should be waived. In so doing, moreover, it has *squarely rejected the notion that a governmental entity with authority to enter contracts, or an agent acting on its behalf, can contractually waive immunity from suit*, as Carowest insists occurred here. It has similarly declined repeated requests to recognize a "waiver by conduct," and has never gone further than

29

its suggestion in Federal Sign that such a waiver might conceivably occur under some set of facts it has not yet seen. Similarly, in the absence of further guidance from the supreme court, this Court (at least in recent years) has consistently rejected requests that we recognize "waivers by conduct" under a variety of factual scenarios.

*City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 521 (Tex.App.–Austin 2014, no pet.) (emphasis added).

Legislative control over the waiver of immunity from suit does not mean that the State can freely breach contracts with private parties, or that the State can use sovereign immunity as a shield to avoid paying for benefits the State accepts under a contract. *Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002). There is a statutory remedy. If a party who contracts with the State feels aggrieved, the party can seek redress by asking the Legislature to waive immunity from suit. *Id.*, citing Tex. Civ. Prac. & Rem. Code §107.001-.005.

Although the commissioners court has authority to enter into contracts on behalf of a county, it does not have authority to waive the county's immunity from suit. *IT-Davy,* 74 S.W.3d at 858 (even though the TNRCC's executive director had the authority to enter into the contract with IT-Davy

30

on the TNRCC's behalf, he did not have authority to, and thus did not, waive the TNRCC's immunity from suit); *Labrado v. Univ. of Texas at El Paso*, 2012 WL 43385, at \*3 (Tex.App.–Austin 2012, no pet.) (only the Legislature, not contracting parties, may waive a governmental unit's immunity).

A county does not waive its immunity by accepting the benefits of a contract. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract).

Likewise, a county does not waive immunity by seeking to comply with the terms of a contract - even if the scope of performance required by the contract is disputed. *Pelzel*, 77 S.W.3d at 252 (when a governmental unit adjusts a contract price according to the contract's express terms, it does not, by its conduct, waive immunity from suit, even if the propriety of that adjustment is disputed).

## Waiver of Governmental Immunity -
## The Lawson Plurality Exception

*Lawson Issues Summarized*

Hughes observes that he pleaded two grounds for waiver of immunity from suit: waiver of immunity for breach of a settlement agreement under application of the *Lawson* case and waiver of immunity by conduct. (Brief:7) He argues: "The issue facing this Court is whether the County waived immunity from suit for its breach of the Agreement – either by breaching a settlement agreement under *Lawson* or by its conduct in breaching the Agreement." (Brief: 8) By "Agreement," Hughes refers to the Mutual Partial Assignments (MPA) which contains the library naming provision. (Brief:3)

This section will address the first issue (*Lawson*): waiver of immunity for breach of a settlement agreement. Following that, the County will address waiver by conduct.

Hughes relies on an immunity waiver theory applied by a plurality of the Supreme Court in *Texas A&M University-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002). In *Lawson*, the state university entered into an agreement which settled Mr. Lawson's Whistleblower claim - being a claim

32

as to which immunity had been statutorily waived. Mr. Lawson brought suit for breach of the agreement.

Four judges (a plurality) concluded that the breach of contract claim was not barred by immunity, ruling that the university had waived immunity by entering into the settlement agreement. The *Lawson* plurality opined: "[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Lawson*, 87 S.W.3d at 521.

Hughes contends that the Mutual Partial Assignments (the source of the library naming provision) settled a claim as to which immunity from suit had been waived. In this regard, he argues that the County lost its immunity from suit by voluntarily intervening in the SMU litigation (the *Reata* exception to immunity). Hughes further contends that, under application of *Lawson*, immunity from suit is as a consequence waived on his suit for breach of the Mutual Partial Assignments (failure to name the library in honor of the Hughes family).

The *Lawson* plurality's theory of immunity waiver (*Lawson* waiver) is not binding authority and should not be adopted. Even if adopted, the Court

can determine the scope of the *Lawson* waiver.

Even if the Mutual Partial Assignments (MPA) settled a claim on which immunity did not apply (disputed), the nature of the claim settled by the MPA is not the sort of claim which falls within the scope of *Lawson* waiver (*Lawson* waiver applying to claims as to which immunity has been statutorily waived).

Even if otherwise applicable, the scope of *Lawson* waiver should be limited to allow suit for an offset (against any monetary recovery obtained by the County) because that is the scope of the immunity exception applicable to Hughes' voluntary intervention theory (being the *Reata* exception to immunity). Alternatively *Lawson* should not be applied to a contract executed in 1994.

Immunity is the default position (it is presumed). It is the application of an exception to immunity which must be justified. Neal, 2011 WL 1744966, at *4 (the legislature has not waived immunity from suit over settlement agreements generally). The application of immunity to settlement agreements need not be justified. *Cf. Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006) (observing that sovereign immunity has long been recognized

34

and, as such, needs no justification - although it serves important purposes).

*Court Not Required to Adopt Lawson*

The *Lawson* plurality's theory of immunity waiver is not binding authority and should not be adopted. This Court is free to adopt or reject *Lawson* waiver and, if adopted, is free to determine the scope of the waiver. Because *Lawson* was decided by a plurality, and because the *Lawson* exception has never been expressly adopted by a Supreme Court majority, the *Lawson* exception to immunity has no precedential value. See Neal, 2011 WL 1744966, at *3 (*Lawson* is a plurality decision lacking precedential value).

This Court has applied *Lawson*. However, it is not clear whether the Court applied *Lawson* because the *Lawson* rationale went unchallenged or whether the court deemed itself bound to apply the rationale. *See e.g. Travis County v. Rogers*, 2015 WL 4718726, at *5 n.1 (Tex.App.–Austin 2015, no pet.). (Pemberton, J., concurring) (observing that the issue was not raised, but Court of Appeals might be bound to apply *Lawson*).

The fact that the Supreme Court has remanded cases for courts to consider the *Lawson* exception does not necessarily signal the Supreme Court's approval of the exception. It may simply signal a desire that the

35

courts of appeal have the first opportunity to determine whether, and the extent to which, the exception should be applied.

The *Lawson* exception to immunity judicially intrudes into an area which is delegated to the Legislature - waiver of sovereign immunity. See *Texas Nat. Res. Conservation Com'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (we have consistently deferred to the Legislature to waive sovereign immunity from suit).

> This is nothing more than an ordinary contract dispute. Unless waived, the State retains its immunity from suit on a contract, whether the contract is for goods and services or a settlement agreement. We have repeatedly held that sovereign immunity in ordinary contract claims is an area best left to legislative judgment. See York, 871 S.W.2d at 177 ("[T]he waiver of governmental immunity is a matter addressed to the Legislature."). Deference to the Legislature to determine sovereign immunity in ordinary breach-of-contract cases claiming waiver by conduct is founded on sound policy. See Fed. Sign, 951 S.W.2d at 413 (Hecht, J., concurring) ("There are compelling reasons for this Court to continue to defer to the Legislature."). Yet today the plurality overrides those compelling reasons and concludes that although the Legislature has not chosen to waive sovereign immunity for this breach-of-contract claim, the University simply "may not" claim immunity in this case.

*Lawson*, 87 S.W.3d at 525-26 (Rodriguez, J., dissent).

In this regard, the question is not whether the *Lawson* exception

36

advances equitable or otherwise beneficial policy. The question is whether the policy choices should be made by the courts or by the Legislature. *Cf. Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) (there is tension between the concept of a governmental entity waiving its immunity from suit by some action independent from the Legislature's waiving immunity and the principle that only the Legislature can waive sovereign immunity).

The *Lawson* exception to immunity also ignores established law that a suit for breach of a settlement agreement is independent of the settled claim.

> The plurality concedes that the Legislature has not waived immunity for *Lawson*'s breach-of-contract claim. Nevertheless, the plurality sidesteps recent precedent concerning sovereign immunity in breach-of-contract suits, wholly ignores established law that a suit for breach of a settlement agreement is independent of the settled claim, and erroneously concludes that the University may not assert immunity.

* * *

> [T]he issue here is whether the State may assert sovereign immunity in an ordinary breach-of-contract case, and the answer to that question is decidedly "yes." Lawson asserted a breach-of-contract claim against the University, and the State has sovereign immunity on that claim. When Lawson settled, he traded in his wrongful termination claims for a settlement contract, and, in addition to accepting $62,000, he accepted the

risk that the State could assert immunity if it breached the contract, just as all people who contract with the State accept that risk. Although such a risk might discourage some parties from contracting with the State, that risk has not daunted the Court before. See Pelzel, 77 S.W.3d at 252; IT-Davy, 74 S.W.3d at 856; Fed. Sign, 951 S.W.2d at 408. Moreover, those who settle for cash and receive payment before dismissing their suit take no risk that the State will assert immunity. Thus, contrary to the plurality's fears, only a handful of settlements in which the private party insists on executory provisions rather than only a cash settlement would be discouraged.

*Lawson*, 87 S.W.3d at 524-25 (Rodriguez, J., dissent).

## *Reata Limitation on Immunity*
## *Has No Application to Lawson Exception*

Even if the *Lawson* rationale is adopted, this Court can determine the scope of the *Lawson* waiver. In order to apply *Lawson* waiver to Hughes' claim, the Court would need to expand the waiver beyond the narrow scope to which it was applied by the *Lawson* plurality.

The *Lawson* plurality opined: "[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Lawson*, 87 S.W.3d at 521 (plurality).

Thus, the *Lawson* rule provides that immunity is waived on a breach of

contract claim if three elements are satisfied:

1- a claim was asserted against the governmental entity;

2- the entity was thereby exposed to suit because of a waiver of immunity; and,

3-the claim was settled by the agreement made the basis of suit.

Even assuming that Hughes met the other two elements (disputed), Hughes has not demonstrated that in the SMU litigation the County was exposed to suit because of a waiver of immunity. Here, in an effort to establish that immunity was waived on a claim allegedly settled by the MPA, Hughes relies on *Reata*'s judicially created voluntary litigation exception to immunity.

However, this Court has declined to extend the *Lawson* waiver in the manner advocated by Hughes. *See A.I. Divestitures, Inc. v. Texas Comm'n on Envtl. Quality*, 2016 WL 3136850, at *8 (Tex.App.–Austin 2016, no. pet. h.) (rejecting argument that the *Reata* exception to immunity will support an application of *Lawson* waiver). A judicially created exception to immunity will not support an application of *Lawson*.

The *Lawson* exception has no application - because even if the Mutual

Partial Assignments (MPA) settled a claim, it did not settle a claim for which the legislature had waived immunity. *See A.I. Divestitures,* 2016 WL 3136850, at *8 (*Lawson* waiver is not implicated when there has been no legislative waiver of the State's immunity). In *Neal*, this Court likewise distinguished *Lawson*, holding as follows: "[T]he present case differs from *Lawson* in a crucial respect: *Lawson* had a statutorily recognized claim (i.e ., a claim for which the State had waived immunity) pending in the trial court when he settled with the State." 2011 WL 1744966, at *4.

The voluntary litigation theory (the *Reata* rule) relied on by Hughes does not give rise to a statutory waiver of immunity. Instead, the voluntary litigation theory gives rise to a limited judicial exception to immunity and, as such, will not support application of a *Lawson* waiver.

Hughes argues that the County "voluntarily intervened in the SMU litigation and had no grounds for asserting sovereign immunity as to Hughes' claim in the SMU Litigation." (Brief:8,10,14). He provides neither argument nor authority. (CR:806).

However, voluntary litigation gives rise to a very limited exception to immunity. *See Employees Ret. Sys. of Texas v. Putnam, LLC*, 294 S.W.3d

40

309, 325 (Tex.App.–Austin 2009, no pet.). In *Putnam*, this Court observed:

> In *Reata*, the court held that when a governmental entity files a lawsuit or otherwise seeks affirmative relief, it waives immunity for connected, germane, and properly defensive counterclaims, but only to the extent those counterclaims offset the claims of the government entity. 197 S.W.3d at 377 ("Absent the Legislature's waiver of the City's immunity from suit, ... the trial court did not acquire jurisdiction over a claim for damages against the City in excess of damages sufficient to offset the City's recovery, if any.").

*Putnam,* 294 S.W.3d at 324-25.

Technically, the *Reata* rule is not a rule of waiver - it is a judicially implemented limitation on the contours of immunity (the extent to which immunity will be applied). This distinction is illustrated by the following:

> Although litigation actions of governmental entities underlay our decisions in *Reata* and similar cases, we did not hold that those actions effected waivers of immunity; rather, they were factors we considered in defining the contours of immunity. In other words, we have not, in *Reata* or other decisions, altered the principles that (1) the boundaries of sovereign immunity are determined by the judiciary, and (2) waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature.

*City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) (authority omitted).

Because the *Reata* rule gives rise to a judicially implemented limitation

on the contours of immunity, its application to *Lawson* waiver is inappropriate because, as noted, *Lawson* waiver is justified (if at all) by its application to statutorily recognized claims (claims as to which the legislature has waived immunity).

This Court recently held that the *Reata* voluntary litigation rule has no application to *Lawson* waiver, holding as follows:

> Relying on *Reata Construction Corporation v. City of Dallas*, A.I. asserts that by filing suit against A.I., the Commission waived immunity concerning any and all of A.I.'s potential defenses and potential offsets. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex.2006). Relying further on *Texas A & M University–Kingsville v. Lawson*, A.I. maintains that because the Commission agreed to settle the enforcement action, for which according to A.I. it had waived its immunity, it could not claim immunity from a suit alleging that it breached that settlement agreement. *See Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520–23 (Tex.2002) (holding exception to sovereign immunity exists when suit alleges breach of agreement settling claim for which Legislature has waived State's immunity).

* * *

> In this case there is no legislative waiver of the Commission's immunity such that applying immunity to A.I.'s suit for breach of an agreement settling the enforcement action would thwart the Legislature's policy judgments in waiving immunity in the first place. *See Lawson*, 87 S.W.3d at 521 ("[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it

42

cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued ... without defeating the purpose of the waiver in the first place."). The *Lawson* exception to sovereign immunity is simply not implicated when there has been no legislative waiver of the State's immunity. A.I.'s breach of contract claim was barred by sovereign immunity, and the district court properly granted the Commission's plea to the jurisdiction as to that claim.

*A. I. Divestitures*, 2016 WL 3136850, at *8.

The Supreme Court has recognized that the *Lawson* rule creates a "narrow exception." *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 838 (Tex. 2007) (pleadings against Texas A & M did not fit the narrow exception suggested by the plurality in *Lawson*). The *Lawson* exception permits immunity to be disregarded only if the agreement settled a claim as to which immunity is statutorily waived.

The rationale underlying *Lawson* provides that the legislature has waived immunity on the claim so enforcement of an agreement settling the claim preserves and perpetuates the statutory waiver. This court has recognized that the *Lawson* plurality "found a waiver of immunity in the situation at bar *only because it concluded that the Legislature intended one.*" *Neal*, 2011 WL 1744966, *13 (emphasis added).

The key distinction - the *Lawson* plurality determined that immunity was waived by the legislature and not by the courts. *See Lawson*, 87 S.W.3d at 522 (once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (in *Lawson*, a plurality of this Court held a plaintiff's claim for breach of an agreement settling his underlying Whistleblower Act claim was encompassed within the Legislature's decision to waive immunity for Whistleblower Act claims).

Both the *Lawson* plurality and dissent recognized the need to give deference to the legislature's role in waiving sovereign immunity. The *Lawson* four-judge dissent opined that the plurality exception failed to give due deference to the Legislature, as follows:

> We have repeatedly held that sovereign immunity in ordinary contract claims is an area best left to legislative judgment. See York, 871 S.W.2d at 177 ("The waiver of governmental immunity is a matter addressed to the Legislature."). Deference to the Legislature to determine sovereign immunity in ordinary breach-of-contract cases claiming waiver by conduct is founded on sound policy. See Fed. Sign, 951 S.W.2d at 413 (Hecht, J., concurring) ("There are compelling reasons for this Court to continue to defer to the Legislature."). Yet today the plurality

44

overrides those compelling reasons and concludes that although the Legislature has not chosen to waive sovereign immunity for this breach-of-contract claim, the University simply "may not" claim immunity in this case.

*Id.* at 525 (Rodriguez, J., dissent).

The *Lawson* plurality recognized that the Legislature was due deference but concluded that such deference was not abridged - because the *Lawson* exception gives effect to a statutorily recognized claim, as follows:

> Allowing suit against the government for breach of an agreement settling a claim for which immunity has been waived does not interfere with the Legislature's policy choices. On the contrary, *having determined to allow suits on such claims* and prescribed the available remedies, the Legislature must surely have considered -- indeed, hoped -- that claims would often be settled. If anything, for the government to be immune from the enforcement of such settlements would impair the purposes of the waiver by limiting its effectiveness in cases not tried to a final judgment.

> \* \* \*

> *Once the Legislature has decided to waive immunity for a class of claims*, the inclusion of settlements within the waiver is consistent with that decision.

> \* \* \*

> In resolving this issue, we have concluded that *the dissent's rigid view of immunity from suit for breach of contract would impair the effectiveness of the legislative waiver of immunity* expressed

45

in the Whistleblower Act by pressuring the government and some claimants to remain in litigation rather than settle.

*Lawson*, id. at 522-23 (plurality, emphasis added).

Enforcing settlements of claims which have not been statutorily authorized denies due legislative deference and is inconsistent with the policies recognized by both the *Lawson* plurality and the *Lawson* dissent. As noted, this court has recognized that the *Lawson* plurality "found a waiver of immunity in the situation at bar *only because it concluded that the Legislature intended one.*" *Neal*, 2011 WL 1744966, *13 (emphasis added).

The following underscores the fact that *Lawson*'s application is limited to claims on which immunity has been statutorily waived.

> *Where the Legislature has chosen to waive immunity as to a cause of action against government*, government settles the claim, and then government allegedly breaches the settlement agreement and tries to invoke immunity as a bar to any claims for breach, *Lawson* holds that the immunity that would ordinarily bar the claims for breach (aside from some sort of independent legislative waiver) does not apply.

*Rogers*, 2015 WL 4718726, at *5 (Pemberton, J., concurring) (emphasis added).

The Legislature is better suited than the courts to weigh the conflicting

46

public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear. *IT-Davy*, 74 S.W.3d at 854; *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 521 (Tex.App.–Austin 2014, no pet.) (the Texas Supreme Court has repeatedly emphasized that it defers to the Legislature to determine whether, when, and how sovereign or governmental immunity should be waived).

Hughes relies on *City of Carrollton v. Singer*, 232 S.W.3d 790 (Tex.App.–Fort Worth 2007, pet. den.). However, *Singer* is consistent with *Lawson*'s application to statutorily authorized claims.

In *Singer*, the court applied *Lawson* to an agreement settling an eminent domain proceeding - in which proceeding the Singers asserted a claim against the City alleging inadequate compensation for the City's acquisition of their property, and for which the City would not be immune. *Singer*, 232 S.W.3d at 800 (Tex. App.–Fort Worth 2007, pet. denied). The *Singer* court observed that condemnation is a process created entirely by statute. *Id.* at 797. The court held that the landowners settled a claim for which the governmental entity's immunity is statutorily waived and that

47

enforcement of that settlement necessarily is included within that initial waiver. *Id.* at 799-800.

Thus *Singer* is consistent with *Lawson*'s limited application, being application to the settlement of statutorily authorized claims. Because the MPA did not settle a statutorily authorized claim, *Lawson* waiver should not be applied.

*Any Recovery*
*Should Be Limited To A Reata Offset*

*Reata* applies retrospectively. *See Putnam,* 294 S.W.3d at 325-26 (given that the Texas Supreme Court has seen fit to apply its decision in *Reata* retrospectively, including to those cases pending on appeal at the time *Reata* was issued, we see no reason not to do so in the present case as well). The principles underlying *Reata* date back to at least 1943. S*ee Reata,* 197 S.W.3d at 377 (observing that *Reata* court merely applies principles promulgated as early as 1943 in the *Humble Oil* case); *cf. Federal Sign v. TSU.*, 951 S.W.2d 401, 408 (Tex. 1997) (the three times this Court considered sovereign immunity in the breach of contract context, we held that the State is immune from suit arising from breach of contract suits).

48

If *Reata*'s judicially implemented limitation on the contours of immunity is engrafted onto the *Lawson* waiver rule, then logic weighs in favor of likewise engrafting and applying *Reata*'s limited scope of jurisdiction: the trial court would not thereby acquire jurisdiction over a claim for monetary relief against the governmental entity in excess of damages sufficient to offset the governmental entity's recovery, if any.

This Court has recognized the limited scope of jurisdiction imparted by *Reata*:

> In *Reata*, the court held that when a governmental entity files a lawsuit or otherwise seeks affirmative relief, it waives immunity for connected, germane, and properly defensive counterclaims, but only to the extent those counterclaims offset the claims of the government entity. 197 S.W.3d at 377 ("Absent the Legislature's waiver of the City's immunity from suit, ... the trial court did not acquire jurisdiction over a claim for damages against the City in excess of damages sufficient to offset the City's recovery, if any.").

*Putnam* 294 S.W.3d at 324-25.

A contrary rule (applying an unlimited waiver of immunity) would raise a disincentive for governmental entities to settle claims. If in the absence of settlement governmental entities are (under operation of *Reata*) exposed to a limited waiver of immunity (damages limited to an offset), but

49

by settling are exposed (under operation of *Lawson*) to an unlimited waiver (and unlimited damages), then governmental entities are not likely to settle claims. Fewer settlements means more litigation.

Hughes seeks damages in the amount of at least $3,000,000 plus attorney's fees. [Appendix3] If the County's voluntary intervention in the SMU litigation, or its conduct, triggered a waiver of immunity (disputed), then the trial court did not thereby acquire jurisdiction over Hughes' claim for monetary relief against the County in excess of an amount sufficient to offset the County's recovery (if any).

*Alternatively Lawson Should Not Be Applied*
*To A Contract Executed in 1994*

If it should be determined that *Reata*'s judicially implemented limitation on the contours of immunity (jurisdiction limited to an offset) is inapplicable, then it would be contrary to public policy to apply the *Lawson* waiver rule to the MPA. *See Putnam,* 294 S.W.3d at 325 (although Texas Supreme Court decisions usually apply retrospectively, exceptions may be recognized when considerations of fairness and policy dictate prospective effect only).

The contract herein made the subject of suit, the MPA, was executed in 1994. The *Lawson* rule was not announced until 2002 and even then it was supported only by a plurality. The rule is yet to be applied by a majority of the Supreme Court.

The *Lawson* plurality supported its immunity waiver by entertaining a presumption that a governmental entity calculates risk when entering into a settlement agreement. The plurality  observed that the governmental entity trades unknowns for knowns, "being obligations that are more accurately assessable." *Lawson*, 87 S.W.3d at 522 ) (plurality). However, here, it cannot be said that the risk (a *Lawson* immunity waiver) was known to the County in 1994.

## *Record Does Not Support A Lawson Waiver*

As was demonstrated, the *Lawson* rule provides that immunity is waived on a breach of contract claim if three elements are satisfied:

1- a claim was asserted against the governmental entity;

2- the entity was thereby exposed to suit because of a waiver of immunity; and,

3-the claim was settled by the agreement made the basis of suit.

Hughes argues that the County lost its immunity on SMU litigation claims by voluntarily intervening in the SMU litigation (being the *Reata* immunity exception). Hughes reasons that the Mutual Partial Assignments (the source of the library naming provision) as a consequence settled a claim as to which the County had no immunity (the *Lawson* immunity waiver).

However, even if this co-mingling of theories (*Reata* and *Lawson*) had merit, the pleaded facts do not fit the theories. The County's intervention in the SMU litigation did not implicate the *Reata* immunity exception. Even if it had, *Lawson* waiver would not be implicated because: (1) Hughes asserted no claim against the County (as contrasted with a claim against SMU); and, (2) the Mutual Partial Assignments (MPA) did not settle a claim.

The record does not implicate the *Reata* immunity exception. The County's intervention in the SMU litigation did not implicate the *Reata* immunity exception (being the second *Lawson* element - "exposed to suit because of waiver").

The *Reata* exception has application only if the governmental entity asserts a claim for damages. The *Reata* court held: "Once it asserts affirmative claims for monetary recovery, the City must participate in the

52

litigation process as an ordinary litigant, save for the limitation that the City continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the City's claims." *Reata*, 197 S.W.3d at 377.

In contrast, a governmental entity's affirmative claim for declaratory relief does not have any effect on the entity's immunity. *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 116 (Tex.App.–Dallas 2013, no pet.).

Here, Hughes pleads that the County sought declaratory relief ("sought a declaration"). (CR:807) Hughes thereby negated the claimed waiver of immunity. The County's intervention did not waive the County's immunity as to claims asserted against the County by Hughes (if any).

Additionally, the County's intervention in the SMU litigation did not implicate the *Reata* immunity exception because, as between the County and Hughes, the County's SMU litigation claim was defensive. The *Reata* goal is to provide *the party sued* an opportunity to assert defensive claims. *See Reata*, 197 S.W.3d at 374 (where a state voluntarily files a suit and submits its rights for judicial determination, the defense will be entitled to plead and

prove all matters properly defensive). The *Reata* court held that "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims *against a party* while claiming it had immunity as to *the party's* claims against it." *Reata*, 197 S.W.3d at 375-76 (emphasis added).

Here however, as between the County and Hughes, in the SMU litigation it was the County which stood in the defendant's shoes. In this regard, the County did not initiate litigation with Hughes. The County sued SMU (by intervening in the pending suit).

If the County is deemed to have asserted a claim against Hughes (disputed), the claim is defensive in nature and as such would not trigger the *Reata* exception to immunity. *Cf. Smith v. Lutz*, 149 S.W.3d 752, 758 (Tex.App.–Austin 2004, no pet.) (since *IT-Davy*, this Court has only recognized a waiver of immunity in contract cases when the State has first sued the contracting party).

Hughes pleads that he intervened after the County had intervened. (CR:808-809) Hughes thereby negated application of a waiver based on voluntary litigation. As between the County and Hughes it was Hughes who stood in the plaintiff's shoes and, consequently, Hughes cannot invoke the

54

benefit of a voluntary litigation doctrine which is designed to afford fairness to a defendant.

The record does not implicate the *Lawson* immunity waiver. Even if Hughes had satisfied the second *Lawson* element (exposed to suit because of waiver), under the facts pleaded the *Lawson* immunity exception would not be implicated because Hughes failed to satisfy the first and third elements. Element One: In the SMU litigation Hughes asserted no claim against the County (as contrasted with a claim against SMU) and thus had no claim against the County that could be deemed settled by the Mutual Partial Assignments (MPA). Element Three: the MPA did not settle a claim - it was the post-MPA agreement and judgment which settled claims.

The trial court found that the MPA is a "mutual settlement agreement." (CR:833) The meaning and intent of this finding is not clear. The trial court erred as a matter of law if it thereby determined that the MPA settled a claim asserted by Hughes against the County - the record conclusively negates such a conclusion. The fact that the trial court granted the plea to the jurisdiction implies that the court did not assign such a construction to the MPA.

In the SMU litigation Hughes asserted no claim against the County (as

contrasted with a claim against SMU) and thus had no claim against the County that could be deemed settled by the MPA. In such litigation, Hughes and the County each sought to establish ownership of assets which were being enjoyed by SMU. Neither Hughes nor the County therein asserted a claim against the other.

In this regard, Hughes pleads that the County sought "a declaration that the residue of the gift to SMU belonged to the County Library." (CR:807) Hughes pleads that Hughes sought "a declaration that because of the lapse in the gift of the residue to Tom Green County, *the residue of the gift to SMU belonged to [the uncle's] heirs at law [the Hughes group]*." (CR:808 - emphasis added) Although the relief sought by Hughes and the County conflicted in the sense that relief for one precluded relief for the other, the claims were asserted *against* SMU.

Additionally, the MPA did not settle a claim. It was the post-MPA agreements and judgment which settled claims. The MPA merely altered the ownership structure of the claims asserted by Hughes and the County against SMU.

By the MPA, the Hughes group assigned to the County "50% of the net

proceeds they actually receive from [the SMU litigation]." (CR:662-663)

Likewise, by the MPA the County assigned to the Hughes group "50% of the net proceeds it actually receives from [the SMU litigation]."(CR:662-663) Similarly, the MPA provides that "[t]hese mutual assignments are irrevocable and are intended to be a mutual exchange of 50% of the respective interests of the parties hereto in any recovery under said cause against SMU and any other adverse parties who may be joined in the cause by mutual agreement of the parties hereto." (CR:664)

In this manner, the MPA merely transfers an interest in net proceeds. The MPA expressly disavows any intent to extinguish claims, providing in relevant part as follows: "[T]his document is in no way intended to eliminate or reduce *in any fashion* the cause of action, claims, or rights held by the heirs-at-law or the County." [Appendix2] (emphasis added).

Hughes reasons that any claim asserted by Hughes against the County in the SMU litigation would still be viable if the MPA did not settle that claim. However, as noted, Hughes did not assert a claim against the County.

In any event, the post-MPA agreements and judgment (not the MPA) settled claims. The County disputes Hughes' assertion that one of these post-

MPA agreements, the Compromise Agreement [Appendix 5], "does not provide for any releases between the County and the Hughes heirs." (Brief:4)

The SMU litigation claims were settled by the Settlement Agreement, the Compromise Agreement, and the Final Judgment. The Compromise Agreement [Appendix 5] summarizes the claims asserted by SMU, the County, and the Hughes group and provides that by the Settlement Agreement [Appendix 4] (another post-MPA agreement) the parties agreed to a "complete and final compromise and settlement of such suit and all of such disputes." Similarly, the trial court signed a Final Judgment [Appendix 6] which recites that "all matters in controversy between the parties which is the subject matter of this suit have been fully and finally agreed to and settled."

## Waiver of Governmental Immunity - By Conduct

Hughes observes that he pleaded two grounds for waiver of immunity from suit: (1) waiver of immunity for breach of a settlement agreement under application of the Lawson case and (2) waiver of immunity by conduct. (Brief:7) He argues: "The issue facing this Court is whether the County waived immunity from suit for its breach of the Agreement – either by breaching a settlement agreement under *Lawson* or by its conduct in breaching the Agreement." (Brief: 8) By "Agreement," he refers to the Mutual Partial Assignments (MPA) which contains the library naming provision. (Brief:3)

This section will address the second issue: waiver of immunity by conduct. This ground for waiver of immunity has special relevance to Hughes' equitable claim captioned "money had and received," alleging that the County accepted the benefits of the MPA and unjustly retained SMU's settlement payment. (CR:813)

Hughes' pleadings do not support a waiver of immunity by conduct. Hughes pleads: "Tom Green County has waived sovereign immunity from suit as a result of its conduct in entering into and then breaching the Mutual

Partial Assignments between Hughes and the County." (CR:806)

Hughes pleads the following facts in support of waiver by conduct exception to immunity:

> 18. At the time that the $1,000,000 settlement offer was made, and although he was already delegated authority, Timothy Weatherby contacted the other County Commissioners, and they all agreed that the County's $500,000 share was "significant" (as it constituted the largest single cash donation the County had ever received), should be accepted, and warranted naming the Central Tom Green County Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews, as set forth in the Agreement. Id.

> 19. Because the Tom Green County representatives at the mediation stated that the County's portion of SMU's offer would be substantial enough to warrant naming the Central Library as contemplated in the Assignment Agreement, the Heirs-at-Law agreed to go along with Tom Green County and accepted SMU's offer. Id. Under the terms of the Assignment Agreement, the Heirs-at-Law and Tom Green County split those proceeds 50/50. Id.

(CR:808)

These statements alleged to have been made at mediation should not be considered for any purpose. Use of the statements is barred by the mediation privilege, being Tex. Civ. Prac. & Rem. Code § 154.073. This statute provides that, subject to exceptions not shown applicable by the record,

> a communication relating to the subject matter of any civil or

60

criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.

Tex. Civ. Prac. & Rem. Code Ann. § 154.073 (West).

Because the statute indicates such privileged information cannot be disclosed or considered, it therefore follows it is a substantive defect that cannot be waived by failing to obtain a ruling from the trial court. *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 793 (Tex.App.–Dallas 2013, pet. denied). Moreover, the County pleaded the statute in bar of such representations. (CR:614)

The *Hydroscience* court observed that "[p]arties must not be allowed to use evidence from mediation to dispute terms of a settlement agreement, particularly years later." 401 S.W.3d at 796. Here, the MPA [Appendix2] (executed in 1994) expressly provides that the commissioners court will have discretion to determine whether the recovery is substantial enough to name the library in honor of the Hughes family. Hughes would use statements allegedly made in mediation to establish that the County's commissioners court had no such discretion, notwithstanding the fact that Hughes pleads that

61

the 1994 commissioners court subsequently (after the statements were made) ratified the MPA. (CR:809)

Additionally, statements made by commissioners outside the context of an official meeting should not be considered. The County is not bound by any such representations. *See Tarrant County v. Smith*, 81 S.W.2d 537, 538 (Tex. Civ. App.–Fort Worth 1935, writ ref'd) (the commissioners' court does not act by the statement of one member thereof at the local drug store and another at the county victuals emporium - they meet as a court and transact the county business in open session); *cf. Labrado,* 2012 WL 43385, at *3 (only the Legislature, not contracting parties, may waive a governmental unit's immunity).

In any event, this court has repeatedly declined to apply a waiver by conduct exception to immunity, as is demonstrated by the following:

> Carowest's notion that the City can unilaterally waive its governmental immunity through its own actions traces back to the Texas Supreme Court's now-infamous footnote in *Federal Sign v. Texas Southern University* intimating that "[T]here may be . . . circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." But in the years since it decided *Federal Sign*, the [Texas Supreme Court] has clarified—and repeatedly emphasized—that it defers to the

Legislature, not the actions of individual governmental units, to determine whether, when, and how sovereign or governmental immunity should be waived. In so doing, moreover, it has squarely rejected the notion that a governmental entity with authority to enter contracts, or an agent acting on its behalf, can contractually waive immunity from suit, as Carowest insists occurred here. It has similarly declined repeated requests to recognize a "waiver by conduct," and has never gone further than its suggestion in *Federal Sign* that such a waiver might conceivably occur under some set of facts it has not yet seen. Similarly, in the absence of further guidance from the supreme court, this Court (at least in recent years) has consistently rejected requests that we recognize "waivers by conduct" under a variety of factual scenarios.

*City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 521

(Tex.App.–Austin 2014, no pet.).

Hughes cites *Texas Southern University v. State Street Bank & Trust Co.*, 212 S.W.3d 893 (Tex.App.-Hou. [1st Dist.] 2007, pet. denied). However, this Court has expressly rejected application of *State Street*. *See Labrado,* 2012 WL 43385, at *3 (court does not have discretion to recognize *State Street's* waiver by conduct exception to sovereign immunity in the absence of Supreme Court authority).

Other courts have likewise criticized *State Street*. *See e.g. City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 114

(Tex.App.–Dallas 2013, no pet.) (the amorphous nature of *State Street's* waiver-by-conduct doctrine weighs against its adoption); *Leach v. Texas Tech Univ.*, 335 S.W.3d 386, 401 (Tex.App.–Amarillo 2011, pet. denied) (*State Street* contradicts the Supreme Court's statements about the only avenue for redress being through the Texas Legislature).

Some courts have distinguished *State Street* on the ground that the *State Street* case involved an egregious set of facts. It appears that no court has applied *State Street* to find a waiver of immunity.

Before this Court expressly rejected any application of *State Street*, this Court distinguished *State Street* in *Smith v. City of Blanco*, 2009 WL 3230836 (Tex.App.–Austin 2009, no pet.). The Court observed that in *State Street* TSU's attorney had given false assurances of the validity and enforceability of the contract to lure CMS into the contract, then TSU reneged on its agreement, and tried to hide behind the cloak of immunity. 2009 WL 3230836, at *4. In *Blanco*, this Court failed to find such egregious conduct - stressing that the city had made no representations to plaintiff concerning immunity. *Id.* The court held that the plaintiff's potential misunderstanding of the law was not enough to justify an equitable waiver of

immunity against the City. *Id.*

As in *Blanco*, the County is not alleged to have made any representations to Hughes concerning immunity. Even if Hughes presumed that the County was obligated to name the library in honor of his family, a misunderstanding of the law does not justify an equitable waiver of immunity.

In *Jonah Water Special Util. Dist. v. White*, 2009 WL 2837649 (Tex.App.–Austin 2009, pet. struck), this Court failed to find the "extraordinary factual circumstances" presented in State Street where the record did not indicate that the defendant had procured a contract with promises it intended to break and the lawsuit appeared to have grown out of what was initially a good-faith disagreement over performance under the contract. 2009 WL 2837649, at *3.

Here, the County asserts immunity in an effort to avoid the expense of trial. The pleaded facts do not demonstrate that the County made promises which it intended to break.

Here, there is a good-faith dispute over performance of the library naming provision: whether the 1994 commissioners court found that the

SMU litigation recovery was substantial enough to name the library in honor of Hughes' family (disputed); and, even if it had, whether in the course of naming the new library the 2011 commissioners court is somehow precluded from making its own determination (a contrary determination). This issue was previously discussed.

Finally Hughes, having waived his statutory remedy, has shown no right to equitable relief. Hughes could have sought legislative consent to sue. *See IT-Davy*, 74 S.W.3d at 854 (if a party who contracts with the State feels aggrieved, it can seek redress by asking the Legislature to waive immunity from suit). Hughes does not plead that he even sought, much less obtained, legislative consent. Hughes has not pleaded a basis for waiver of immunity by conduct.

## PRAYER

Appellee Tom Green County prays:

1. That the judgment be in all matters affirmed.

2. That Appellee have such other relief as to which it has shown itself entitled.

Respectfully submitted,

*James D. Walker*

JAMES DAVID WALKER
P. O. Box 41
Milano, Texas 76556
SBOT 20706000
Phone: (512) 636-9520
Email: walker@2appeal.com
COUNSEL FOR
TOM GREEN COUNTY

## CERTIFICATE OF WORD COUNT

I certify that this document contains 12,672 words.

*James D. Walker*

## CERTIFICATE OF SERVICE

On June 17, 2016, this document was electronically served on Counsel for Appellant: David H. Smith (dhsmith@dgclaw.com).

*James D. Walker*
James David Walker

# NO. 03-16-00132-CV
# HUGHES V. TOM GREEN COUNTY


# APPENDIX TO APPELLEE'S BRIEF

Appendix1.    Order Granting Tom Green County's Plea to the
              Jurisdiction  (CR:833)

Appendix2.    Mutual Partial Assignments (CR:692-700)

Appendix3.    Plaintiff's Third Amended Petition to Enforce Settlement
              Agreement and Declaratory Judgment Action (exhibits
              omitted) (CR:805-815)

Appendix4.    Settlement Agreement (CR:751)

Appendix5.    Compromise and Settlement and Release of All Claims
              (RR3:241-247)

Appendix6.    Final Judgment (SMU Litigation) (RR3:159-163)

**Appendix1**

**Order Granting
Tom Green County's Plea to the Jurisdiction**

**(CR:833)**

CAUSE NO. A130194C

| CHARLES J. HUGHES, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | TOM GREEN COUNTY, TEXAS |
| | § | |
| TOM GREEN COUNTY, | § | |
| Defendant. | § | 51ˢᵗ JUDICIAL DISTRICT |

## ORDER GRANTING TOM GREEN COUNTY'S
## PLEA TO THE JURISDICTION

On February 16, 2016, the Court heard and considered Tom Green County's Plea to the Jurisdiction. After hearing evidence and argument of counsel, the Court finds that Tom Green County's Plea to the Jurisdiction should be granted.

It is, therefore, ORDERED that Charles Hughes' claims and causes of action arising out of or pertaining to the Mutual Partial Assignments are dismissed for lack of subject matter jurisdiction. The Court finds the Mutual Partial Assignment in this matter to be in fact a mutual Settlement Agreement. JG

Signed this 16 day of February 2016.

_____
JUDGE PRESIDING

**JAY GIBSON**
SENIOR DISTRICT JUDGE
SITTING BY ASSIGNMENT

833

**Appendix2**

**Mutual Partial Assignments**

**(CR:692-700)**

PTG-is 06/25/94
g:\trial\91991f1.agn

## MUTUAL PARTIAL ASSIGNMENTS

WHEREAS, Charles Hughes, Carol Crews Carter, and Joan Crews Hoyt, (hereinafter referred to as the "heirs-at-law") have filed an intervention in Cause No. CV91-0426-A, styled "In Re: The will of Duwain E. Hughes, Jr., Deceased," against Southern Methodist University (hereinafter referred to as "SMU"), believing and claiming that, among other things, the Last Will and Testament of Duwain E. Hughes, Jr. does not specify how his estate will be handled or to whom it will pass after all bequests have been satisfied due to endowment fulfillments and lapsed bequests, such that the heirs-at-law, as defined by Texas legal statutes, should inherit from Duwain E. Hughes, Jr.; and

WHEREAS, Tom Green County (hereinafter referred to as "the County") has filed an intervention in Cause No. CV91-0426-A, styled "In Re: The will of Duwain E. Hughes, Jr., Deceased," against SMU, believing and claiming that, among other things, the Last Will and Testament of Duwain E. Hughes, Jr. specifies that the estate assets in excess of the bequest to SMU should pass to the County, pursuant to the residuary clause contained in the will; and

WHEREAS, the heirs-at-law and the County would inevitably suffer severe costs and legal expenses by independently pursuing their causes of action regarding the construction of the will of Duwain E. Hughes, Jr. (hereinafter referred to as "the Will") due to the unlimited funds available to SMU, even though it is clear

EXHIBIT
51
de Cordova

HUGHES_RRFP000001

692

that either the heirs-at-law or the County or both are clearly entitled, by both the terms of the Will as well as the applicable Texas statutes, rules and laws, to receipt of all monies, properties, and mineral interests under the Duwain E. Hughes, Jr. Will in excess of the gift to SMU (the Duwain E. Hughes, Jr. Chair for English of Southern Methodist University) upon said Chair's endowment having been fulfilled; and

WHEREAS, the Chair was established with an endowment in excess of $500,000, such that the testamentary intent of the gift to SMU in the Will has been fully and completely fulfilled and satisfied; and

WHEREAS, there is no dispute among the signatories to this document that SMU is certainly not entitled to anything above $500,000 for the Chair endowment, pursuant to the Will; and

WHEREAS, the signatories hereto agree that this document is in no way intended to eliminate or reduce in any fashion the causes of action, claims, or rights held by the heirs-at-law or the County; and

WHEREAS, SMU has filed suit in Cause No. CV91-04260A, styled "In Re: The will of Duwain E. Hughes, Jr., Deceased," simply for the purpose of obtaining all the assets and production from those assets to use for purposes other than endowment of a Chair in the SMU English Department, all of which is wholly inappropriate and contrary to the testamentary intent of Duwain E. Hughes, Jr.; and

WHEREAS, SMU should not and is not entitled to take more than was bequeathed to it by the Will, i.e., $500,000 for a Chair in

-2-

HUGHES_RRFP000002

693

English, under any legal theory, principle of equity, or claim of justice; and

WHEREAS, the heirs-at-law and the County believe, and feel that the Will is clear, that Duwain E. Hughes, Jr. never intended his entire mineral estate to pass to SMU for whatever unlimited purposes it desired.

NOW, THEREFORE, know all men by these presents:

That the undersigned parties to this agreement do hereby agree as follows:

1. **Parties.**

The parties to this agreement are Charles Hughes, Carol Crews Carter, and Joan Crews Hoyt (hereinafter collectively referred to as "the heirs-at-law") and Tom Green County (hereinafter referred to as "the County").

2. **Agreement to Continue Litigation and to Assign Proceeds of Causes of Action.**

Upon the execution of this agreement by all parties, and in consideration of the County's actions mentioned herein, Charles Hughes, Carol Crews Carter, and Joan Crews Hoyt agree to continue the litigation against SMU, to amend the pleadings as all parties hereto jointly deem appropriate in such suit, and to seek collection of the sums owed by SMU to the heirs-at-law and the County. The heirs-at-law, as herein defined, further agree, and by affixing their signatures to this document, do hereby assign to and for the benefit of Tom Green County 50% of the net proceeds they actually receive from Cause No. CV91-0426-A, styled "In Re: The

-3-

HUGHES_RRFP000003

694

will of Duwain F. Hughes, Jr., Deceased," after satisfaction of all expenses, costs, and legal fees, and 50% of all mineral interests they actually receive from said lawsuit; however, the designated heirs-at-law shall exclusively retain all executive rights regarding all such mineral interests. This partial assignment to Tom Green County is without restriction or limitation regarding the use to which these funds or mineral interests may be applied.

The County further agrees, in consideration of the actions of the designated heirs-at-law mentioned herein, that the County, by affixing the signature of the duly authorized representative of the County to this document does hereby assign to and for the benefit of Charles Hughes, Carol Crews Carter, and Joan Crews Boyt, jointly, 50% of the net proceeds it actually receives from Cause No. CV91-0426-A, styled "In Re: The will of Duwain F. Hughes, Jr., Deceased," after satisfaction of all expenses, costs, and legal fees and 50% of all mineral interests it actually receives from said lawsuit; however, the County agrees that the designated heirs-at-law shall exclusively retain and/or be assigned herein all executive rights regarding all such mineral interests. In further consideration of this matter, the County agrees to name the main county library, in honor of Duwain B. Hughes, Jr., if the commissioners consider the County's ultimate recovery in the cause to be substantial enough for such recognition. ~~In that event, the main library shall be named the Duwain B. Hughes, Jr. Library or other name that incorporates the testator's name.~~

-4-

HUGHES_RRFP000004

695

"Executive rights" shall mean the exclusive right to execute oil, gas and mineral leases without joinder of the County as to the combined minerals of the heirs-at-law and the County and does not include bonuses or other revenues from the respective mineral interests of the parties.

These mutual assignments are irrevocable and are intended to be a mutual exchange of 50% of the respective interests of the parties hereto in any recovery under said cause against SMU and any other adverse parties who may be joined in the cause by mutual agreement of the parties hereto.

3.  **Prosecution of Litigation and Settlement.**

From the date of these mutual assignments, the undersigned parties, in conjunction with their attorneys, Thompson, Coe, Cousins & Irons, L.L.P. and Hall & Lane, L.L.P. shall be jointly responsible for the continuation and prosecution of the litigation involving SMU and any other culpable parties who may be added as parties in such action. Any claims originally owned, prior to this assignment, by Tom Green County may be brought in its name or in the name of the heirs-at-law, and any claims originally owned by the heirs-at-law, prior to this assignment, may be brought in their names or in the name of Tom Green County. The parties and their attorneys shall jointly make the determination regarding in whose name(s) the suit shall be continued. Nothing in this agreement is intended to prevent the parties from filing suit, or continuing litigation, both in the name of the assignor and in the name of the assignee. It is further understood and agreed that all signatories

-5-

HUGHES_RRFP000005

696

hereto will fully and faithfully cooperate in the development and prosecution of the litigation, which will include, but not be limited to, appearance by deposition or at trial of any necessary witnesses, establishing the claims that are the subject of these mutual partial assignments, and further, availability for trial if it is deemed necessary by counsel in furtherance of the prosecution and to collect the partially-assigned proceeds of the litigation; however, all litigation expenses shall be borne by the heirs-at-law and the County, as established by their respective attorneys' fee agreements.

. It is further expressly understood and agreed that all control over prosecution and/or settlement of the litigation between the heirs-at-law and the County on the one hand and against SMU or other culpable parties on the other hand shall be jointly controlled by the signatories hereto.

4. Representations and Indemnity:

The undersigned heirs-at-law represent to the county that they jointly represent and would own a two-thirds interest in the estate of all of the intestate heirs-at-law of Duwain E. Hughes, Jr., if he had died without a will at any time during 1985 through the present time, and that they jointly represent and would own a two-thirds interest in the estate of all the intestate heirs-at-law of Duwain E. Hughes, Jr., if he had died without a will on his actual date of death, excluding in the latter case only the one-eighth interest held in trust for the life of Carlotta Hartman, remainder to the undersigned heirs-at-law.

-6-

HUGHES_RRFP000006

697

Each of the undersigned heirs-at-law represents to the county that the intestate interests described above and their claims thereto remain intact as to the assets and minerals in issue in said cause and that there have been no prior assignments, conveyances, or transfers of any kind that would affect any of their interests therein, there have been no liens, deeds of trust, security interests, or other encumbrances granted or imposed upon any of their interests therein, there have been no bankruptcy or other debtor proceedings that would adversely affect their interests therein, and there are no other defects, adverse claims, or other matters that would adversely affect their interests, as intestate heirs, in the assets and minerals in issue in said cause other than the law regarding the disposition of any excess of the gift to SMU.

The county represents to the undersigned heirs-at-law that the county's interest in and claims to the assets and minerals in issue in said cause, as beneficiary of the residue, remain intact and that there have been no prior assignments, conveyances, or transfers of any kind that would affect the county's interest therein, there have been no liens, deeds of trust, security interests, or other encumbrances granted or imposed upon its interest therein, there have been no bankruptcy or other debtor proceedings that would adversely affect its interest therein, and there are no other defects, adverse claims, or other matters that would adversely affect its interest, as beneficiary of the residue, in the assets and minerals in issue in said cause, other

-7-

HUGHES_RRFP000007

698

than the effect of the county's sale of the house described in the residuary clause and the law regarding the disposition of any excess of the gift to SMU.

In the event a party has assigned less than that party represents herein that that party has to assign, the assignee party or parties shall be entitled to recover the deficiency from the assigning party and shall have any other remedies provided by law.

5. **Miscellaneous.**

The signatories hereto specifically waive any conflicts of interest, whether actual or potential, which exist, or may exist, by the mutual representation of all parties hereto, following the execution of this document and the effectuation of the mutual partial assignments reflected herein, by the law firm of Thompson, Coe, Cousins & Irons, L.L.P. and Hall & Lane, L.L.P.

The signatories further waive any conflicts of interest in the representation by Thompson, Coe, Cousins & Irons, L.L.P. of the heirs-at-law against the County, and the representation by Hall & Lane, L.L.P. of the County against the heirs-at-law as to any disputes, breaches, or misrepresentations that may arise under this agreement.

This agreement is entered into in the State of Texas and shall be construed and interpreted in accordance with the laws of the State of Texas.

It is understood that the consideration stated herein is of a contractual nature and not a mere recital.

-8-

HUGHES_RRFP000008

699

All parties to this agreement agree to and will execute any documents necessary to comply with any requirements imposed by Texas Property Code § 12.014(b).

All parties agree that this document may be executed in multiple originals, with such documents being construed as a single document.

_____
CHARLES J. HUGHES

_____
CAROL CREWS CARTER

_____
JOAN CREWS HOYT

_____
Duly Authorized Representative of and from Tom Green County

APPROVED:

_____
David M. Taylor
Rhonda Johnson Byrd
On behalf of Charles J. Hughes,
Carol Crews Carter and
Joan Crews Hoyt

_____
Philip R. Lane
On behalf of Tom Green County

-9-

HUGHES_RRFP000009

700

**Appendix3**

**Plaintiff's Third Amended Petition
to Enforce Settlement Agreement
and Declaratory Judgment Action
(exhibits omitted)**

**(CR:805-815)**

## CAUSE NO. A130194C

| | | |
|---|---|---|
| **CHARLES J. HUGHES,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **TOM GREEN COUNTY, TEXAS** |
| | § | |
| **TOM GREEN COUNTY,** | § | |
| | § | |
| **Defendant.** | § | **51st JUDICIAL DISTRICT** |

### Plaintiff's Third Amended Petition to Enforce
### Settlement Agreement and Declaratory Judgment Action

To the Honorable Judge of the Court:

Plaintiff Charles J. Hughes files this Third Amended Petition to Enforce a Settlement Agreement he entered with Tom Green County to resolve claims the underlying lawsuit.

### I.      Related Case

1.      This action is being filed to enforce a settlement agreement entered in Cause No. CV91-0426-A; *In re the Will of Duwain E. Hughes, Jr.*, in the 51st Judicial District Court of Tom Green County.

### II.     Discovery

2.      Discovery in this action should be governed by the Level III scheduling order entered in this matter.

### III.    Parties

3.      Plaintiff Charles J. Hughes is a resident of Tom Green County.

4.      Defendant Tom Green County is a county located in Texas. Tom Green County has answered and appeared in this suit.

---

## IV.   Venue and Jurisdiction

5.      Venue is mandatory in Tom Green County.  Tex. Civ. Prac. & Rem. Code § 15.015.

6.      This Court has subject matter jurisdiction over Tom Green County because this action arises from a settlement agreement entered between parties to an action initiated, in part, by Tom Green County, and Tom Green County thereby waived sovereign immunity.  *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale*, 14 S.W. 299, 300 (Tex. 2000)(holding the state waives immunity from suit when it files suit); *Tex. A&M Univ.–Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex. 2002)(holding where the state has waived sovereign immunity, and then enters an agreement settling the claims subject to that waiver, the state cannot assert sovereign immunity as a basis to avoid enforcement of the settlement).  Further, Tom Green County has waived sovereign immunity from suit as a result of its conduct in entering into and then breaching the Mutual Partial Assignments between Hughes and the County.

7.      In addition, Hughes files a declaratory judgement action seeks to invalidate and set aside a March 1, 2011 motion and resolution of the Tom Green County Commissioners' Court made in violation of the Texas Open Meeting Act. Texas courts have repeatedly held that the State has waived sovereign immunity for alleged violations of the Texas Open Meetings Act.  *See, e.g., Riley v. Comm'rs Ct.*, 413 S.W.3d 774, 776 - 77 (Tex. App. - Austin 2013, no pet.). Moreover, this action seeks recovery of amounts in excess of the minimum jurisdictional limits of this Court.

7.      In addition to declaratory relief, Hughes seeks monetary relief of over $1,000,000.00.

## V.   Facts

8.      Duwain E. Hughes, Jr. was the uncle of Charles J. Hughes.  Duwain Hughes lived in San Angelo and taught English for many years.   Following Duwain Hughes's death, The Will

of Duwain E. Hughes, Jr. (the "Will") was probated in the County Court of Tom Green County, Texas, on April 6, 1965.

9.      Under the terms of the Will, Duwain E. Hughes, Jr. left his then new home, collection of rare books, and his music collection to the Tom Green County Library board, to establish an adjunct library in his name.  Duwain E. Hughes, Jr. also left the residue of his estate to the Tom Green County Library Board to pay down the mortgage on the home and for the upkeep and maintenance of his home.  At that time, this residual gift included a significant mineral estate that was worth several million dollars.

10.      Inexplicably, instead of honoring Duwain E. Hughes, Jr.'s wishes and maintaining his home as a library, the County chose to sell the home at a steep discount.  This allowed the residuary gift of Duwain E. Hughes, Jr.'s estate to arguably lapse to Southern Methodist University ("SMU"), which also received gift of specific mineral interests under the Will.

11.      On April 9, 1991, Southern Methodist University filed a lawsuit styled *In re: The Will of Duwain E. Hughes, Jr.* in the 51st Judicial District Court of Tom Green County under Cause No. CV91-0426-A (the "Underlying Suit").  In the Underlying Suit, SMU requested that the court release a restriction on the use of a gift made to it under the Will for the endowment of a Chair of English for SMU, so that the excess value of that gift could otherwise be used to support and maintain the English Department for SMU. At that time, the value of the mineral estate that SMU had received exceeded the maximum amount necessary to endow a Chair for the Department of English by approximately $4,000,000.

12.      On May 3, 1991, Tom Green County intervened in the Underlying Suit on behalf of the Tom Green County Library, and sought a declaration that the residue of the gift to SMU belonged to the County Library.

13.  On March 30, 1993, Charles J. Hughes intervened and sought a declaration that because of the lapse in the gift of the residue to Tom Green County, the residue of the gift to SMU belonged to Duwain E. Hughes, Jr.'s heirs-at-law – Charles J. Hughes, Carol Crews Carter, and Joan Crews Hoyt (the "Heirs-at-Law").

14.  The Court ordered the parties to mediation of the SMU Lawsuit on May 26, 1994. Prior to mediation, Tom Green County and the Heirs-at-Law entered an agreement titled Mutual Partial Assignments (hereafter the "Agreement"), attached hereto as Exhibit A, by which the parties irrevocably assigned and divided the proceeds of any recovery in the lawsuit 50% to the Heirs-at-Law, and 50% to Tom Green County. The signatories to the Agreement were authorized to sign by all required authorities.

15.  Specifically, under the terms of the Agreement Tom Green County promised to name its Central Tom Green County Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews, "if the commissioners consider the County's ultimate recovery to be substantial enough for such recognition." Exhibit A, p. 4.

16.  The Tom Green County Commissioner's Court authorized Timothy Weatherby, one of the Commissioners at the time, to serve as the County's representative for the mediation. Exhibit B, Affidavit of Timothy Weatherby. Mr. Weatherby was fully aware that a settlement and substantial recovery from SMU would trigger the naming obligation under the Assignment Agreement. *Id.* Counsel for the County, Phil Lane, and the County Attorney, Tom Goff, also participated in the mediation. Pursuant to the Agreement, Hughes and the Heirs at Law aligned with the County at mediation and joined forces against SMU. After the initial separate offers to the County and to the Heirs at Law, the County representatives and the Heirs at Law moved into the same room and began negotiating for joint offers from SMU.

17.     SMU offered to pay the Heirs-at-Law and Tom Green County $1,000,000 in settlement for their claims. *Id.*

18.     At the time that the $1,000,000 settlement offer was made, and although he was already delegated authority, Timothy Weatherby contacted the other County Commissioners, and they all agreed that the County's $500,000 share was "significant" (as it constituted the largest single cash donation the County had ever received), should be accepted, and warranted naming the Central Tom Green County Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews, as set forth in the Agreement. *Id.*

19.     Because the Tom Green County representatives at the mediation stated that the County's portion of SMU's offer would be substantial enough to warrant naming the Central Library as contemplated in the Assignment Agreement, the Heirs-at-Law agreed to go along with Tom Green County and accepted SMU's offer. *Id.* Under the terms of the Assignment Agreement, the Heirs-at-Law and Tom Green County split those proceeds 50/50. *Id.*

20.     On July 6, 1994, Tom Green County Commissioner's Court met in open session. During this session, the Commissioners considered the ultimate recovery in the lawsuit to be substantial enough and ratified the Agreement with Hughes and the Heirs at Law.

21.     After ratifying the Agreement and the separate agreement settling claims against SMU and dismissing the lawsuit, Tom Green County deposited the settlement proceeds it received into a segregated bank account called the Hughes Library Fund. Exhibit B.

22.     Tom Green County used a part of the Hughes Library Fund to hire an architect to evaluate potential new locations for the central library, and also utilized a portion of the funds to hire a grant consulting firm to assist the Library Board with grant applications. *Id.*

23.     The planning and preparation for the new library location was interrupted, however, when financial difficulties caused by bad investments and criminal cover ups by a previous County

Treasurer made it necessary to utilize a portion of the Hughes Library Fund to assist Tom Green County in meeting its financial shortfalls. *Id.*

24.     The Tom Green County Commissioners discussed the use of the Hughes Library Fund to assist with the County's financial burdens with Charles Hughes, who agreed to allow the fund to be used in such a manner, so long as the County fulfilled its obligation to name the new Central Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews, whenever it was built. *Id.* The County agreed to this stipulation. *Id.*

25.     Charles Hughes met and spoke with County Judge Mike Brown and Timothy Weatherby on a number of occasions to discuss the County's plans regarding the naming of the Central Library, and was repeatedly informed that the issue would be addressed when the location for the new central library was chosen, and it was an appropriate occasion for giving it a name.

26.     The Tom Green County Central Library remained unnamed until March 1, 2011, when the Tom Green County Commissioners met to vote on naming portions of the new Tom Green County Central Library, which had just been constructed by remodeling the former Hemphill-Wells Building. Exhibit C, Excerpt of Minutes of County Commissioners Meeting. Notwithstanding the County's agreement with Mr. Charles Hughes, and the donations made by his uncle Duwain E. Hughes, Jr. —which had the County retained would have had a value of more than $12,000,000— the County Commissioners read a pre-written "motion" and "voted" unanimously to name the library the "Stephens Central Library," in recognition of a recent $3,000,000 donation from Pollyanna and Steve Stephens. *Id.*

27.     In addition to a blank for the Commissioners to fill in with "Stephens Central Library," the pre-written motion provided that "Tom Green County's ultimate recovery in [the Underlying Lawsuit] is *not substantial enough* to name Tom Green County's main library in honor of Duwain E. Hughes Jr. [or] in honor of Frances Hughes Crews . . . ." *See* Exhibit C (emphasis added).

28.     On information and belief, the County Commissioners came to a final decision on this matter and pre-drafted the accompanying motion in a private meeting prior to the public hearing - a meeting at which neither Plaintiff nor any other members of the public were present. The pointed reference to the language of the Assignment Agreement clearly indicates the County Commissioners were aware of the County's prior obligation to the Hughes family, and entered the March 1, 2011 hearing with a settled intent to disregard that obligation, regardless of the Commissioners Court's decision on July 6, 1994. Thus, the naming decision was a foregone conclusion, and the County's purported deliberations and "vote" at the hearing were simply a sham. The pre-written motion only announced the County's pre-determined decision, and was orchestrated to present an appearance of due process and facial compliance with the Open Meetings Act.

## VI.     Causes of Action

29.     The foregoing facts are fully incorporated herein by reference for all purposes.

### A.     Declaratory Judgment

30.     Section 551.102 of the Texas Open Meetings Act (the "Act") provides that "[a] final action, decision, or vote on a matter deliberated in a closed meeting under this chapter may only be made in an open meeting that is held in compliance with the notice provisions of this chapter."

31.     The March 1, 2011 motion was pre-determined and pre-written by the Commissioners prior to the public hearing. Upon information and belief, the official "vote" taken in open session was merely an announcement of the actual decision, which was made by the Commissioners in private, outside of the open meeting. Neither Plaintiff nor any other member of the public received any notice of, or were given any opportunity to participate in, these private deliberations.

32.     Such actions constitute a direct violation of the Texas Open Meetings Act and the March 1, 2011 resolution should therefore be declared invalid and set aside. *See* TEX. GOV'T CODE ANN. § 551.141 ("An action taken by a governmental body in violation of this chapter is voidable");

*See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex. 1975) (recognizing the courts' inherent authority to invalidate and set aside government decisions made in violation of the Act).

33.     Violations of the Texas Open Meetings Act may be addressed through a number of remedies available under the Act and separate statutory authorities. One such remedy is found in Section 551.142 of the Act, which allows any "interested person" to "bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." In lieu of a writ of mandamus or injunction, an "interested person" authorized under Section 551.142 may also seek a declaratory judgment to invalidate the unlawful act under Chapter 37 of the Texas Civil Practice and Remedies Code. *See Bd. of Trs. v. Cox Enters., Inc.*, 679 S.W.2d 86, 88 (Tex. App. - Texarkana 1984) (recognizing declaratory judgment action as an additional option to challenge violations of the Act); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (authorizing a court to declare the "rights, duties, and other legal relations" of citizens and public officials).

**B.      Breach of Settlement Agreement**

34.     The Agreement constituted a valid and enforceable settlement agreement between Tom Green County and the Heirs-at-Law, including Charles Hughes.

35.     Tom Green County waived sovereign immunity with respect to those claims by intervening in the Underlying Lawsuit filed by SMU.

36.     Tom Green County accepted the proceeds from the settlement reached with SMU and the Heirs-at-Law, including Charles Hughes, thus Charles Hughes and the other Heirs-at-Law fully performed their obligations under the settlement agreement.  Further, on July 6, 1994, Tom Green County ratified the Agreements.

37.     Tom Green County, however, has materially breached the Agreement by failing and refusing to name the Tom Green County Central Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews.  At the time of the County's breach on March 1, 2011, the value of the naming obligation was $3,000,000.00.  As a result of the County's breach, Hughes suffered damages in the amount of the lost value of the naming obligation – $3,000,000.00.

38.     Further, and in the alternative, because Tom Green County has materially breached the agreement, it is liable for the  $500,000 in settlement proceeds it received, plus pre-judgment and post judgment interest.

### C.     Action for Money Had and Received

39.     Tom Green County accepted the benefits of the Assignment Agreement, and the subsequent settlement reached with SMU and the Heirs-at-Law.  By accepting those benefits, Tom Green County enjoyed the savings of significantly limiting the scope and risk associated with the Underlying Lawsuit as it approached mediation, and then benefitted from its use of the $500,000 in settlement proceeds for many years.

40.     Tom Green County received this benefit on the basis of false promises that it would name the Tom Green County Central Library in honor of Duwain E. Hughes, Jr. or Frances Hughes Crews.

41.     Tom Green County has failed and refused to do equity, by returning the $500,000 it has unjustly received, in exchange for its promise to name the Central Library.

42.     Tom Green County has instead named the Central Library the "Stephens Central Library," and continues to retain, or has otherwise appropriated the $500,000 it received and that in equity, justice, or in law belongs to Hughes.

43.     Therefore, Tom Green County is obligated to return the $500,000 to the Charles Hughes as is equitable and just.

**VII.    Conditions Precedent**

44.    All conditions precedent to the relief sought by Charles Hughes have been fulfilled or have occurred.

**VIII.    Attorney's Fees**

45.    Charles Hughes seeks reasonable and necessary attorneys' fees for Tom Green County's breach of contract pursuant to Texas Civil Practice & Remedies Code Section 38.001(8) and seeks such attorneys' fees as are equitable and just pursuant to Texas Civil Practice and Remedies Code Section 37.009.

**IX.    Damages**

46.    As a result of Tom Green County's breach of the Agreement, Hughes suffered the loss of the value of the naming obligation, which at the time of the County's breach was valued at $3,000,000.00.

47.    Alternatively, as a result of Tom Green County's breach of the Agreement, Hughes suffered the loss of his share of $500,000 by his reliance on the County's Agreement.

48.    Further, and in the alternative, Tom Green County was unjustly enriched in the amount of $500,000.00 in funds that it received and that amount should be returned to Hughes.

**IX.    Prayer**

Wherefore, Plaintiff Charles J. Hughes respectfully requests that upon trial of this matter the Court enter judgment for Hughes against Tom Green County, invalidate and set aside the March 1, 2011 Resolution made in violation of the Texas Opening Meetings Act, order the County to pay Charles J. Hughes the amount of damages sought herein, plus pre-judgment interest, costs, attorney fees, post judgment interest, and grant Charles J. Hughes such other and further relief, at law or in equity, to which he is justly entitled.

Respectfully submitted,

**DAVIS, GERALD & CREMER**
**A Professional Corporation**
400 W. Illinois, Ste. 1400
Midland, Texas 79701
432-687-0011
Fax: 432-687-1735


By: _____ /s/ *Daniel J. Harper* _____
David H. Smith
Texas Bar No. 00794652
dhsmith@dgclaw.com

Daniel J. Harper
Texas Bar No. 24074363
djharper@dgclaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of February, 2016, a true and correct copy of the foregoing was delivered as follows:

VIA E-SERVICE
Wm. Keith Davis
Hay, Wittenburg, Davis, Caldwell &
Bale, L.L.P.
P.O. Box 271
San Angelo, Texas 76902


_____ /s/ *Daniel J. Harper* _____
Daniel J. Harper

# Appendix4

# Settlement Agreement

# (CR:751)

# SETTLEMENT AGREEMENT

This is a memorandum of understanding between the undersigned parties in settlement of a pending dispute, which has been voluntarily resolved through a mediation process conducted at Judicial Arbitration & Mediation Services, Inc. (J·A·M·S) on the date hereinbelow indicated. In accordance with their understanding, the parties agree:

Cause No. CV 91-0426-A In Re the Will of Duwain E. Hughs, Jr. In the District Court of Tom Green Co. 51st Judicial Court is settled. S.M.U. will pay $1,000,000.00 (One Million Dollars) to Tom Green County and the other parties to this suit save and except Katharine Trigg in full, final and complete settlement of this cause. Attorneys for S.M.U. will prepare necessary and appropriate releases and all parties will dismiss claims (except S.M.U. and Tom Green County) will obtain appropriate judgement with respect to Duwain Hughes' will. This agreement is subject to the approval of Commissioners Court of Tom Green Co. and the Attorney General of Texas. Each party will bear its own costs. All parties will be bound by the judgment.

The parties further agree that, except as they may hereafter agree in writing, to maintain confidentiality with respect to all verbal and written communications made or used in connection with the dispute resolution process, as provided by the Texas Alternative Dispute Resolution Procedures Act (Tex. Civ. Prac. & Rem. Code Ann. Section 154.073 (Vernon's Supp. 1991) and that the mediator will never be subpoenaed or called as witness by any party to this dispute.

It is also agreed: (1) that the attorneys for said parties have prepared and approved this agreement, and that the parties have relied entirely on the legal advice of their respective counsel in effecting this settlement; (2) that the parties enter into this agreement of their own voluntary will and accord; and (3) that this agreement will be considered to have been made pursuant to Rule 11, Texas Rules of Civil Procedure. The parties further agree to execute and deliver such additional agreements and documents as shall be necessary to carry out the purposes of this agreement, and that this agreement may be enforced as any other contract.

Signed this 26th day of May 1994 at Austin, Texas.

_____
Parties and/ or Representative

Tom Green County _____
Parties and/ or Representative

_____
Counsel

_____
Counsel

DEPOSITION
EXHIBIT
80
1-12-16
PENGAD 800-631-6989

751

**Appendix5**

**Compromise and Settlement and Release of All Claims**

**(RR3:241-247)**



DEFENDANT'S
EXHIBIT
4

NO. CV91-0426-A



DEPOSITION
EXHIBIT
15
8-11-14 ew

| | | |
|---|---|---|
| IN RE: THE WILL OF | § | IN THE DISTRICT COURT OF |
| | § | |
| DUWAIN E. HUGHES, JR., | § | |
| DECEASED | § | TOM GREEN COUNTY, TEXAS |
| | § | |
| SOUTHERN METHODIST UNIVERSITY, | § | |
| BENEFICIARY | § | 51ST JUDICIAL DISTRICT |

## COMPROMISE AND SETTLEMENT AND RELEASE OF ALL CLAIMS

WHEREAS, SOUTHERN METHODIST UNIVERSITY, acting through its Board of Trustees, herein referred to as SMU, filed an Application to Release Restriction with reference to the will of Duwain E. Hughes, Jr., in the above entitled and numbered cause, and has supplemented such application with its Supplemental Petition for Declaratory Judgment, which pleadings and all amendments and supplements and the will of Duwain E. Hughes, Jr. are here referred to for all purposes;

WHEREAS, TOM GREEN COUNTY, on behalf of TOM GREEN COUNTY LIBRARY, filed a Plea In Intervention in said cause, which plea in intervention was amended by TOM GREEN COUNTY with its First Amended Plea in Intervention and Original Counterclaim for Declaratory Judgment, and a Supplemental Plea in Intervention and Counterclaim for Declaratory Judgment, which pleadings asserted rights in the Estate of Duwain E. Hughes, Jr., and such pleadings and all amendments and supplements are here referred to for all purposes;

WHEREAS, CHARLES J. HUGHES filed his Plea In Intervention and Petition for Declaratory Judgment in said cause, which asserted rights in the Estate of Duwain E. Hughes, Jr., and made KATHARINE HUGHES TRIGG, CAROL CREWS CARTER,

COMPROMISE AND SETTLEMENT AND RELEASE OF ALL CLAIMS    -    Page 1

AND JOAN CREWS HOYT, additional interested parties in the suit, such pleadings and all amendments and supplements are here referred to for all purposes;

WHEREAS, pursuant to order of the Court SMU filed a Petition to Join Party which made FIRST NATIONAL BANK OF WEST TEXAS, TRUSTEE OF THE CARLOTTA HUGHES TRUST as an additional party to the suit;

WHEREAS, all parties who have or might have an interest in the Estate of Duwain E. Hughes, Jr. to the extent of the oil, gas and minerals and disputes described herein, are parties to the suit and have filed pleadings, which pleadings are here referred to for all purposes;

WHEREAS, there are various disputes concerning the will of Duwain E. Hughes, Jr., and the Estate of Duwain E. Hughes, Jr., which disputes are reflected in the various pleadings which have been filed herein, and which disputes include, without limitation, interpretation of the will of Duwain E. Hughes, Jr., denomination and classification of the nature of the gift made to SMU in paragraph No. III. of such will, whether or not such will created a fee simple title to the properties described in SMU without limitation or restriction, whether or not the will created a charitable trust to SMU for the purpose of funding one chair in the English department at SMU, whether or not the purpose of such a trust, if any, has been fulfilled and whether the funds in excess of such fulfillment should belong to Tom Green County under paragraph No. V. of the will or to the intestate heirs of Duwain E. Hughes, Jr., whether or not there are restrictions in the will on the use of the funds by Tom Green County, whether or not the doctrine of cy pres is applicable, and if so, how it should be applied, whether or not restrictions, if any, on the use of the funds, by SMU or Tom Green County should be relieved pursuant to the Texas Uniform Management

Funds Act, Tex. Prop. Code § 163.001 et seq., or under the doctrine of cy pres, all of which disputes are further detailed in the pleadings filed herein;

WHEREAS, it is agreed that resolution of the said disputes is problematical and difficult to predict with any degree of certitude, that said suit, unless compromised and settled by the parties, will require extensive time and expense in the courts, and the parties therefore have agreed to a complete and final compromise and settlement of such suit and all of such disputes in accordance with the agreement made at the mediation hearing conducted on May 26, 1994, which compromise and settlement is further reduced to writing in this agreement which is as follows:

1. SMU will pay One Million and no/100 Dollars ($ 1,000,000) collectively to Tom Green County, Charles J. Hughes, Carol Crews Carter, and Joan Crews Hoyt, which payment will be made on execution of the settlement documents by all parties and on entry of a final judgment in this suit by the presiding judge.

2. Judgment will be entered in the suit which will declare and confirm:

a. that SOUTHERN METHODIST UNIVERSITY has a vested fee title in the oil, gas and other minerals owned by Duwain E. Hughes, Jr., at his death, situated in Reagan and Irion Counties, Texas, save and except any interest therein which had been inherited by Duwain E. Hughes, Jr., from his brother Jackson Hughes, and all claims made by the parties to this proceeding other than SOUTHERN METHODIST UNIVERSITY to said oil, gas and other minerals are held for naught and denied;

b. that SOUTHERN METHODIST UNIVERSITY is entitled to all funds and income which it has received from the Estate of Duwain E. Hughes, Jr.,

and all claims made to such funds and income by the parties to this proceeding other than SOUTHERN METHODIST UNIVERSITY are held for naught and denied;

c. that the restriction, if any, contained in the will of Duwain E. Hughes, Jr., concerning the use of the estate devised to SOUTHERN METHODIST UNIVERSITY under such will is obsolete, inappropriate or impracticable, and is released to the extent that SOUTHERN METHODIST UNIVERSITY shall be entitled to use the property and income therefrom derived from the estate of Duwain E. Hughes, Jr., for the purpose of establishing, supporting and maintaining a chair in its English Department, called the "Duwain E. Hughes, Jr. Distinguished Chair in English", and for any other purpose connected with supporting and maintaining the English Department at SOUTHERN METHODIST UNIVERSITY;

d. that the restriction, if any, contained in the will of Duwain E. Hughes, Jr., concerning the use of the estate devised to TOM GREEN COUNTY LIBRARY under such will is obsolete, inappropriate or impracticable and is is released to the extent that TOM GREEN COUNTY, ON BEHALF OF TOM GREEN COUNTY LIBRARY, shall use any funds derived from the settlement of the claims made by TOM GREEN COUNTY in this suit for any purpose connected with operating, supporting, maintaining and housing the Tom Green County Library;

e. that all claims made by the parties to this proceeding against SOUTHERN METHODIST UNIVERSITY have been fully and finally settled and released,

and all relief prayed for by any party not specifically granted is specifically denied;

f. that all court costs and attorney's fees shall be borne by and paid by the party incurring the same; and

g. that the judgment entered is restricted solely to the declaration of rights to the oil, gas and minerals which were part of the estate of Duwain E. Hughes, Jr. and that other oil, gas and mineral interests of any kind owned by the parties hereto or their predecessors in title are not in any manner determined or affected by the judgment.

3. In consideration of the agreements made herein and the money to be paid as set forth herein, TOM GREEN COUNTY, on behalf of TOM GREEN COUNTY LIBRARY, CHARLES J. HUGHES, CAROL CREWS CARTER, JOAN CREWS HOYT, FIRST NATIONAL BANK OF WEST TEXAS, TRUSTEE OF THE CARLOTTA HUGHES HARTMAN TRUST (which has made no claim against SMU), and KATHARINE HUGHES TRIGG (who has made no claim against SMU), DO HEREBY FOREVER RELEASE, REMISE AND DISCHARGE SOUTHERN METHODIST UNIVERSITY from all claims of any kind or nature pertaining to or arising from the will and Estate of Duwain E. Hughes, Jr., and from all causes of action which have been asserted in this suit, or which might have been asserted in this suit.

4. All parties agree to pay the attorney's fees and court costs incurred by such party, which agreement shall be reflected in the judgment of the Court to be entered herein.

5. It is further understood and agreed that this agreement is a compromise and settlement of a disputed matter, it is not an admission of liability or facts by any party

hereto, and neither this compromise and settlement agreement nor any part thereof shall ever be construed or used as an admission on the part of any party hereto.

6. This compromise and settlement agreement and release contains the entire agreement between the parties, and the terms hereof are contractual and not a mere recital.

EXECUTED in multiple counter parts on this the _____ day of _____, 1994.

SOUTHERN METHODIST UNIVERSITY

By: _____

SMITH, CARTER, ROSE & FINLEY

By: _____
George S. Finley, Attorney for Southern Methodist University

CARLOTTA HUGHES HARTMAN
_____

FIRST NATIONAL BANK OF WEST TEXAS ON BEHALF OF THE CARLOTTA HUGHES HARTMAN TRUST

By: _____

SIMS, KIDD, HUBBERT & WILSON

By: _____
John C. Sims, Attorney for First National Bank of West Texas

TOM GREEN COUNTY

By: _____

HALL & LANE, L.L.P.

By: _____
Phil Lane, Attorney for Tom Green County

_____
KATHERINE HUGHES TRIGG

_____
CHARLES J. HUGHES

_____
CAROL CREWS CARTER

_____
JOAN CREWS HOYT

HUGHES & LUCE, L.L.P.

By: _____
Vester T. Hughes, Attorney for
Katherine Hughes Trigg

THOMPSON, COE, COUSINS, & IRONS,
L.L.P.

By: _____
Rhonda Johnson Byrd, Attorney for
Charles J. Hughes, Carol Crews Carter,
and Joan Crews Hoyt

**Appendix6**

**Final Judgment
(SMU Litigation)**

**(RR3:159-163)**

NO. CV91-0426-A

| | | |
|---|---|---|
| IN RE: THE WILL OF | § | IN THE DISTRICT COURT OF |
| | § | |
| DUWAIN E. HUGHES, JR., | § | |
| DECEASED | § | TOM GREEN COUNTY, TEXAS |
| | § | |
| SOUTHERN METHODIST | § | |
| UNIVERSITY, BENEFICIARY | § | 51ST JUDICIAL DISTRICT |

## FINAL JUDGMENT

On this __27__ day of ___September___, 1994, came on to be heard the above entitled and numbered cause, and it was announced to the Court that all matters in controversy between the parties which is the subject matter of this suit have been fully and finally agreed to and settled as is further evidenced by the signatures of all parties and their attorneys agreeing to this judgment, and the Court, having considered the pleadings, the agreement of the parties and the evidence offered, finds and concludes as follows:

that the Court has jurisdiction over all the parties hereto and that all necessary parties for entry of this judgment are properly before the Court;

that the Attorney General of the State of Texas has filed a proper Waiver of the right of the State of Texas to intervene and be a party to this proceeding;

that the Court has jurisdiction over the subject matter of this suit, and the jurisdiction and authority to enter this judgment, pursuant to its general jurisdictional authority, and pursuant to the Uniform Management of Institutional Funds Act, Texas Property Code § 163.001 et seq., and the Uniform Declaratory Judgments Act, Texas Civil Practice & Remedies Code, § 37.001 et seq.; and the Court finds and is of the opinion that this judgment should be entered.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

A. SOUTHERN METHODIST UNIVERSITY has a vested fee title in the oil, gas and other minerals owned by Duwain E. Hughes, Jr., at his death, situated in Reagan and Irion Counties, Texas, save and except any interest therein which had been inherited by Duwain E. Hughes, Jr. from his brother Jackson Hughes, and all claims made by the parties to this proceeding other than SOUTHERN METHODIST UNIVERSITY to said oil, gas and other minerals are held for naught and denied;

B. SOUTHERN METHODIST UNIVERSITY is entitled to all funds and income which it has received from the Estate of Duwain E. Hughes, Jr., and all claims made to such funds and income by the parties to this proceeding other than SOUTHERN METHODIST UNIVERSITY are held for naught and denied;

C. the restriction, if any, contained in the will of Duwain E. Hughes, Jr., concerning the use of the estate devised to SOUTHERN METHODIST UNIVERSITY under such will is obsolete, inappropriate or impracticable, and it is hereby decreed that such restriction is released to the extent that SOUTHERN METHODIST UNIVERSITY shall be entitled to use the property and income therefrom derived from the estate of Duwain E. Hughes, Jr., for the purpose of establishing, supporting and maintaining a chair in its English Department, called the "Duwain E. Hughes, Jr. Distinguished Chair in English", and for any other purpose connected with supporting and maintaining the English Department at SOUTHERN METHODIST UNIVERSITY;

D. the restriction, if any, contained in the will of Duwain E. Hughs, Jr., concerning the use of the estate devised to TOM GREEN COUNTY LIBRARY under such will is obsolete, inappropriate or impracticable and it is hereby decreed that such restriction is released to the extent that TOM GREEN COUNTY, ON BEHALF OF TOM GREEN COUNTY LIBRARY, shall use any funds derived from the settlement of the claims made by TOM GREEN COUNTY in this suit for any purpose connected with operating, supporting, maintaining and housing the Tom Green County Library;

E. all claims made by the parties to this proceeding against SOUTHERN METHODIST UNIVERSITY have been fully and finally settled and released, and all relief prayed for by any party not specifically granted herein is specifically denied; and

F. all court costs and attorney's fees shall be borne by and paid by the party incurring the same, and it appearing to the Court that all costs of this suit have been paid, no further order is entered with respect thereto.

IT IS SPECIFICALLY ORDERED AND DECREED that the judgment entered in this case is restricted solely to the declaration of rights to the oil, gas and minerals which were part of the estate of Duwain E. Hughes, Jr. Other oil, gas and mineral interests of any kind owned by the parties hereto or their predecessors in title are not in any manner determined or affected by this judgment.

SIGNED this 27 day of SEPTEMBER, 1994.

_____
CURT STEIB, JUDGE PRESIDING

APPROVED AND AGREED TO:

SOUTHERN METHODIST UNIVERSITY

By: _____

SMITH, CARTER, ROSE & FINLEY

By: _____
George S. Finley, Attorney for Southern
Methodist University


FIRST NATIONAL BANK OF WEST
TEXAS ON BEHALF OF THE
CARLOTTA HUGHES HARTMAN TRUST

By: _____

SIMS, KIDD, HUBBERT & WILSON

By: _____
John C. Sims, Attorney for First
National Bank of West Texas


TOM GREEN COUNTY

By: _____

HALL & LANE, L.L.P.

By: _____
Phil Lane, Attorney for Tom Green
County


HUGHES & LUCE, L.L.P.

_____
KATHERINE HUGHES TRIGG

By: _____
Vester T. Hughes, Attorney for
Katherine Hughes Trigg

_____
CHARLES J. HUGHES


FINAL JUDGMENT

- Page 4

_Carol Crews Carter_
CAROL CREWS CARTER

_Joan Crews Hoyt_
JOAN CREWS HOYT

THOMPSON, COE, COUSINS, & IRONS, L.L.P.

By: _____
Rhonda Johnson Byrd, Attorney for
Charles J. Hughes, Carol Crews Carter,
and Joan Crews Hoyt